Victoria Rae VANDERPOOL, Janis Claire Stark, and Ray Todd Vanderpool, Appellants

v.

Barbara Sharp VANDERPOOL, Appellee.

No. 12–12–00358–CV.

Court of Appeals of Texas, Tyler.

Aug. 13, 2014.

---

Paul M. Boyd, Tyler, for Appellants.

James L. Hedrick, M. Keith Dollahite, Tyler, for Appellees.

Panel consisted of WORTHEN, C.J., GRIFFITH, J., and HOYLE, J.

## OPINION OVERRULING REHEARING

JAMES T. WORTHEN, Chief Justice.

Victoria Rae Vanderpool, Janis Claire Stark, and Ray Todd Vanderpool (Appellants) have filed a motion for rehearing, which is overruled. This court's opinion dated April 23, 2014, is withdrawn and the following opinion is substituted in its place.

Appellants appeal the trial court's order granting summary judgment in favor of Barbara Sharp Vanderpool. They raise one issue on appeal. We affirm in part, reverse in part, and remand the case for further proceedings.

## BACKGROUND

This case involves a dispute over the disposition of property in which Ray Leland Vanderpool owned a life estate and Appellants owned the remainder interest. Appellants are Ray's children, and Barbara is their stepmother.

In the third and fourth codicils to their wills, Appellants' grandparents, Milton and Beulah Vanderpool, bequeathed a life estate in an undivided one-half of their real and personal property to Ray and the remainder interest to Appellants.

Milton died on February 26, 1986, and Beulah died on February 27, 1991. Their estates consisted of real and personal property, including the "family farm" and 213 Krugerrands.

On February 15, 2005, Ray and Barbara conveyed real property, including Ray's interest in the family farm, to Jack King, Jr. and his wife, Debra. The documents pertaining to the transaction included a promissory note (the King note), payable to Ray and Barbara, which had a final maturity date of February 15, 2010.[1]

Ray died on March 1, 2007. When the King note matured, Barbara did not distribute any of its proceeds to Appellants.

On November 14, 2011, Appellants filed suit alleging "causes of action" for conversion and breach of fiduciary duty, a constructive trust, and an accounting. Appellants later amended their petition to include allegations of fraud and "breach of confidential relationship" as additional causes of action. Appellants' complaints are based on Barbara's failing to distribute their portion of the King note proceeds and withholding the Krugerrands after their father's death.

---

1. We derived the information concerning the conveyance and the maturity date of the King note from Appellants' third amended original petition. The documents pertaining to this transaction are not in the record.

Barbara filed a motion for partial summary judgment contending the statute of limitations barred Appellants' causes of action for conversion and breach of fiduciary duty, and later responded that the discovery rule and doctrine of fraudulent concealment did not apply. In an amended order, the trial court granted Barbara's motion for partial summary judgment on Appellants' "causes of action for fraud, conversion, breach of fiduciary duty, accounting and a constructive trust." The trial court granted Appellants' motion to sever their claims against Barbara from their claims against the remaining defendant and signed a final judgment. This appeal followed.

### Summary Judgment Standard of Review

Appellants contend that the trial court erred in granting Barbara's motion for partial summary judgment. We review a trial court's grant of summary judgment de novo. *Frost Nat'l Bank v. Fernandez,* 315 S.W.3d 494, 508 (Tex.2010), *cert. denied,* —— U.S. ——, 131 S.Ct. 1017, 178 L.Ed.2d 829 (2011); *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex.2005).

A defendant who moves for summary judgment has the burden of showing that there is no genuine issue of material fact concerning one or more essential elements of the plaintiff's claims, or must plead and conclusively establish an affirmative defense to show that she is entitled to judgment as a matter of law. *See* Tex.R. Civ. P. 166a(c); *Cathey v. Booth,* 900 S.W.2d 339, 341 (Tex.1995); *In re Estate of Melchior,* 365 S.W.3d 794, 798 (Tex.App.-San Antonio 2012, pet. denied).

■■■ A defendant moving for summary judgment on the affirmative defense of limitations must conclusively prove when the cause of action accrued. *See KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.,* 988 S.W.2d 746, 748 (Tex.1999). In addition, the defendant must negate the discovery rule, if it applies and has been pleaded or otherwise raised, by proving as a matter of law that there is no genuine issue of material fact about when the plaintiff discovered, or in the exercise of reasonable diligence should have discovered, the nature of its injury. *See id.; Velsicol Chem. Corp. v. Winograd,* 956 S.W.2d 529, 530 (Tex.1997) (per curiam). Evidence is conclusive only if reasonable people could not differ in their conclusions, a matter that depends on the facts of each case. *City of Keller v. Wilson,* 168 S.W.3d 802, 816 (Tex.2005); *see also Anderton v. Cawley,* 378 S.W.3d 38, 46 (Tex.App.-Dallas 2012, no pet.) (citations omitted) ("A matter is conclusively established if ordinary minds could not differ as to the conclusion to be drawn from the evidence.").

■■■ If the defendant establishes that a matter is barred by limitations, the plaintiff must then produce evidence raising an issue of fact to avoid summary judgment. *In re Estate of Melchior,* 365 S.W.3d at 798. We review the record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. *City of Lorena v. BMTP Holdings, L.P.,* 409 S.W.3d 634, 645 (Tex.2013); *Valence,* 164 S.W.3d at 661.

### Conversion—Note Proceeds

In their first issue, which comprises three subissues, Appellants challenge the trial court's rulings pertaining to their cause of action for the conversion of note proceeds (subissue 1), the discovery rule (subissue 2), and the doctrine of fraudulent concealment (subissue 3). We will address each subissue separately.

In their first subissue, Appellants contend that the trial court erred in granting

summary judgment on Barbara's limitations defense to Appellants' cause of action for conversion of note proceeds. Barbara contends that this cause of action is time-barred because it accrued no later than October 3, 2007, and Appellants did not file suit until November 14, 2011.

### Applicable Law

A conversion of personal property occurs upon the unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another to the exclusion of, or inconsistent with, the owner's rights. *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 447 (Tex.1971). The limitations period for a claim of conversion is two years. TEX. CIV. PRAC. & REM.CODE ANN. § 16.003(a) (West Supp.2013). The date a cause of action accrues is a question of law. *See Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 567 (Tex.2001).

Generally, a claim accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred. *See S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex.1996). In conversion actions where possession is initially lawful, and demand and refusal is useless or unequivocal acts of conversion have occurred, the cause of action accrues upon demand and refusal or discovery of facts supporting the cause of action, whichever occurs first. *Hofland v. Elgin–Butler Brick Co.*, 834 S.W.2d 409, 414 (Tex.App.-Corpus Christi 1992, no pet.); *see also Wells Fargo Bank Nw., N.A. v. RPK Capital XVI, L.L.C.*, 360 S.W.3d 691, 702 (Tex. App.-Dallas 2012, no pet.).

### Discussion

Appellants' claim for conversion of note proceeds arises out of Ray and Barbara's sale of Ray's interest in the family farm to Debra and Jack King, Jr. The summary judgment evidence does not include a copy of the King note or any other document showing the terms of the note.

To be entitled to summary judgment as a matter of law, Barbara must have conclusively proved that Appellants' cause of action for conversion of the King note proceeds accrued more than two years prior to November 14, 2011—the date suit was filed. *See KPMG*, 988 S.W.2d at 748. She contends that the cause of action accrued no later than October 3, 2007, the date the inventory of Ray's estate was filed, because the inventory gave Appellants constructive notice that the proceeds of the note were from the sale of real property in which they owned a remainder interest.

### Constructive Notice

When the doctrine of constructive notice is applied, it creates an irrebuttable presumption of actual knowledge of certain matters. *See HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 887 (Tex. 1998); *Salinas v. Gary Pools, Inc.*, 31 S.W.3d 333, 336 (Tex.App.-San Antonio 2000, no pet.). The doctrine of constructive notice is usually applied when a person knows where to find relevant information but failed to seek it out. *Little v. Smith*, 943 S.W.2d 414, 421 (Tex.1997).

Persons interested in an estate admitted to probate are charged with notice of the contents of the probate records. *Mooney v. Harlin*, 622 S.W.2d 83, 85 (Tex. 1981). An "interested person" or "person interested" in an estate is "an heir, devisee, spouse, creditor, or any other having a property right in or claim against an estate being administered...." TEX. EST.CODE ANN. § 22.018(1) (West 2014).

Courts will impose constructive notice of the contents of a public record when there exists a need for stability and certainty, as in instances relating to titles

to real property and in circumstances concerning in rem proceedings. *See HECI*, 982 S.W.2d at 887. But an unrecorded deed does not give constructive notice. *Gensheimer v. Kneisley*, 778 S.W.2d 138, 141 (Tex.App.-Texarkana 1989, no pet.) (citations omitted).

*Summary Judgment Evidence*

■ Appellants are devisees under their grandparents' wills. Thus, Appellants are charged with constructive notice of their grandparents' probate records. *See* Tex. Est.Code Ann. § 22.018(1); *Mooney*, 622 S.W.2d at 85. The inventories filed in Milton's and Beulah's probate proceedings list real property, stocks, bonds, mortgages, notes, cash, and miscellaneous property valued at more than one million dollars. Both inventories listed "13.812 acres, David Page Survey, Abstract 16, Tract 6, Smith County, Texas." Both inventories also listed acreage in the David Page Survey, Abstract 16, Tract 3, Smith County, Texas. Milton's inventory described this tract as 100.81 acres, while Beulah's inventory described it as 100.018 acres. Despite this discrepancy, it is undisputed that these tracts comprise the family farm.

Upon Ray's death, Barbara was appointed independent executrix of his estate. The inventory of Ray's estate was filed on October 3, 2007, and lists real and personal property valued at more than one million dollars. The inventory refers to the King note as "Jack King note [$]627,102.00." Even if we were to assume that this entry is sufficient to provide constructive notice

generally, the summary judgment record does not contain Ray's will or any other probate documents that show Appellants qualified as "persons interested" in Ray's estate. *See* Tex. Est.Code Ann. § 22.018(1). Thus, Barbara's summary judgment evidence does not show that Appellants had constructive notice of Ray's probate records. *See id.*; *Mooney*, 622 S.W.2d at 85.

Barbara further contends Appellants had "constructive notice" because their petition "quotes the recorded deed of trust executed by the Kings to demonstrate that the King note was the proceeds of the sale of property in which" Appellants claim an interest.[2] We have reviewed Appellants' third amended original petition, which was filed on July 24, 2012. The references to the King note show Appellants' actual notice that the note represented proceeds from the sale of the family farm, but there is no summary judgment evidence showing when they acquired this information, other than Ray Todd Vanderpool's statement that the release of lien was filed on March 3, 2010. *See Madison v. Gordon*, 39 S.W.3d 604, 606 (Tex.2001) ("Actual notice rests on personal information or knowledge[, while constructive] notice is notice the law imputes to a person not having personal information or knowledge."). Other than the inventory from Ray's estate, the summary judgment record does not include a copy of any recorded document pertaining to the King note. Therefore, we cannot determine the date on which any such documents provided con-

---

**2.** In her brief, Barbara states, "Appellants[ ] have previously admitted that, if the discovery rule and doctrine of fraudulent concealment do not apply, Appellants' causes of action accrued on March 1, 2007." Barbara cites Appellants' third amended original petition to support this assertion. In their third amended petition, Appellants state that "the earliest

date their causes of action could have accrued would have been March 1, 2007." We do not interpret this statement, or any other statement contained in Appellants' third amended original petition, as an acknowledgement that their causes of action accrued on March 1, 2007, absent application of the discovery rule or doctrine of fraudulent concealment.

structive notice to those who should be charged with it.

### Conclusion

After viewing the evidence in the light most favorable to Appellants, indulging every reasonable inference, and resolving any doubts in Appellants' favor, we conclude that Barbara did not establish as a matter of law that Appellants' cause of action for conversion of note proceeds accrued more than two years prior to the date the suit was filed (November 14, 2011). *See KPMG*, 988 S.W.2d at 748; *Valence*, 164 S.W.3d at 661. Thus, the trial court erred in granting summary judgment on Appellants' cause of action for conversion as it relates to the King note proceeds. Accordingly, we sustain Appellants' first subissue.

### THE DISCOVERY RULE

In their second subissue, Appellants contend that Barbara owed them a fiduciary duty and did not prove as a matter of law that the discovery rule was inapplicable to their causes of action. Because we have determined that it was error to grant summary judgment on Appellants' claim for conversion of the King note proceeds, we limit our discussion to Appellants' causes of action for conversion of the Krugerrands and breach of fiduciary duty.[3] *See* TEX.R.APP. P. 47.1.

### Applicable Law

▮▮▮▮ The discovery rule defers the accrual of a cause of action until the injury was or could have reasonably been discovered. *Shell Oil Co. v. Ross*, 356 S.W.3d 924, 929–30 (Tex.2011). Similarly, when

there has been a breach of fiduciary duty, the statute of limitations does not begin to run until the claimant knew or should have known facts that in the exercise of reasonable diligence would have led to the discovery of the wrongful act. *Little*, 943 S.W.2d at 420. The discovery rule applies only when the nature of the plaintiff's injury is both inherently undiscoverable and objectively verifiable. *Shell Oil*, 356 S.W.3d at 930 (citations omitted). An injury is inherently undiscoverable if, by its nature, it is unlikely to be discovered within the prescribed limitations period despite due diligence. *S.V.*, 933 S.W.2d at 7 (citations omitted). Whether an injury is inherently undiscoverable is determined on a categorical basis, and the focus is on the type of, rather than the particular, injury involved. *Shell Oil*, 356 S.W.3d at 930; *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 314 (Tex. 2006).

### Inherently Undiscoverable

In *S.V.*, the Texas Supreme Court held that the common thread in "inherently undiscoverable injuries" is that "the wrong and injury were unknown to the plaintiff because of their very nature and not because of any fault of the plaintiff...." *S.V.*, 933 S.W.2d at 7. An injury's discoverability is not dependent solely on the nature of the injury, but also on the circumstances in which it occurred, as well as the plaintiff's diligence. *Id.*

▮▮▮▮ The discovery rule does not excuse a party from exercising reasonable diligence in protecting its own interests. *See Computer Assoc. Int'l, Inc. v. Altai*,

---

**3.** The courts sometimes refer to informal fiduciary relationships as confidential relationships. *See Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex.1962); *Lee v. Hasson*, 286 S.W.3d 1, 14 (Tex.App.-Houston [14th Dist.] 2007, pet. denied). Because the existence of a confidential relationship may give rise to the imposi- tion of a fiduciary duty, we need address only Appellants' cause of action for breach of fiduciary duty and not breach of confidential relationship. *See Thigpen*, 363 S.W.2d at 253; *Lee*, 286 S.W.3d at 14. We address Appellants' cause of action for fraud in a separate section of this opinion.

*Inc.,* 918 S.W.2d 453, 456–57 (Tex.1996); *Conoco, Inc. v. Amarillo Nat'l Bank,* 14 S.W.3d 325, 328 (Tex.App.-Amarillo 2000, no pet.). A plaintiff is relieved of the responsibility of diligent inquiry if the injury is the result of fiduciary misconduct, but the discovery rule is not applied so as to excuse a party from the exercise of diligence in protecting his own interests merely because a relationship of trust and confidence exists. *S.V.,* 933 S.W.2d at 8; *Johnson v. Abbey,* 737 S.W.2d 68, 70 (Tex. App.-Houston [14th Dist.] 1987, no writ) (citations omitted).

*Fiduciary Relationship*

 Texas courts are reluctant to recognize a fiduciary relationship because it requires a person to place someone else's interests above her own. *See Lindley v. McKnight,* 349 S.W.3d 113, 124 (Tex. App.-Fort Worth 2011, no pet.). The term "fiduciary" applies to any person who occupies a position of peculiar confidence towards another, and can arise in formal and informal relationships. *See Lee v. Hasson,* 286 S.W.3d 1, 14 (Tex.App.-Houston [14th Dist.] 2007, pet. denied). Informal fiduciary relationships, sometimes referred to as "confidential relationships," may give rise to a fiduciary duty where one person trusts in and relies on another, whether the relation is a moral, social, domestic, or purely personal one. *See Thigpen v. Locke,* 363 S.W.2d 247, 253 (Tex.1962); *Lee,* 286 S.W.3d at 14. An informal fiduciary relationship exists where influence has been acquired and abused, and confidence has been reposed and betrayed. *Prime Prods., Inc. v. S.S.I. Plastics, Inc.,* 97 S.W.3d 631, 638 (Tex.App.-Houston [1st Dist.] 2002, pet. denied). A familial relationship, while considered a factor, does not by itself establish a fiduciary relationship. *See Gray v. Sangrey,* 428 S.W.3d 311, 316 (Tex.App.-Texarkana 2014, pet.

denied) (citing *Tex. Bank & Trust Co. v. Moore,* 595 S.W.2d 502, 508 (Tex.1980)).

 A party claiming the existence of an informal fiduciary relationship (confidential relationship) must have been accustomed to being guided by the judgment or advice of the other. *Thigpen,* 363 S.W.2d at 253; *see also Lee,* 286 S.W.3d at 14 (citations omitted). The existence of an informal fiduciary relationship is generally a question of fact. *Id.* But the issue is a question of law when the facts are undisputed or there is no evidence to show the existence of an informal fiduciary relationship. *See Meyer v. Cathey,* 167 S.W.3d 327, 330–31 (Tex.2005); *Trostle v. Trostle,* 77 S.W.3d 908, 914–15 (Tex.App.-Amarillo 2002, no pet.). To determine whether a fiduciary relationship exists, courts review the actualities of the relationship between the parties involved. *See Thigpen,* 363 S.W.2d at 253. Not every relationship involving a high degree of trust and confidence rises to the stature of a fiduciary relationship. *Meyer,* 167 S.W.3d at 330. The granting of summary judgment regarding the nonexistence of informal fiduciary relationships generally will be upheld when the evidence is undisputed and shows nothing more than a party's subjective trust of the other. *See, e.g., Garcia v. Vera,* 342 S.W.3d 721, 724 (Tex.App.-El Paso 2011, no pet.); *Jones v. Blume,* 196 S.W.3d 440, 449 (Tex.App.-Dallas 2006, pet. denied); *Prime Prods., Inc.,* 97 S.W.3d at 638.

**Discussion**

Appellants acknowledge that "[t]he application of the discovery rule to this case rests in large part upon whether a fiduciary relationship existed" between them and Barbara. In determining whether the discovery rule applies, we consider the nature and circumstances of Appellants' injury, the actualities of their relationship with

Barbara, and whether Appellants conducted a diligent inquiry to protect their remainder interest in the life estate property. *See S.V.*, 933 S.W.2d at 7–8; *Thigpen*, 363 S.W.2d at 253.

*The Nature of and Circumstances Surrounding Appellants Injury*

As pertinent to this section, Appellants' suit against Barbara is based upon the deprivation of their undivided one-half remainder interest in 213 Krugerrands. But their grandparents' third and fourth codicils provided that the life estate tenant "shall not be required to account for or repair any waste, injury or damage to or depreciation of" life estate property and shall not be required "to replace any part thereof as may be used up ... or become destroyed by any cause or reason during the term of such life estate." Thus, the nature of Appellants' injury is the deprivation of a remainder interest that is subject to waste, injury, damage, depreciation, destruction, and loss by the life tenant.

Appellant Victoria Vanderpool testified that about two days after her father's death, Barbara stated that she did not know what she would live on because " 'the kids are going to be receiving all the oil checks from now on.'" Based upon statements made by her uncle and her personal knowledge of Ray's "financial irresponsibility," Victoria assumed that Barbara's statement meant the life estate assets "had been used up, except for the oil and gas interests." Victoria testified further that because Barbara was appointed executrix of Ray's estate and was the trustee of a credit shelter trust created during Ray's lifetime, she relied on the fact that Barbara "would know of any other property that she and [her] father enjoyed during his lifetime."

Ray Todd Vanderpool testified that Barbara forwarded him oil and gas royalties and payments from property (the Garrett property) that she said were life estate assets. When the promissory note on the Garrett property matured, Barbara told Ray Todd that Appellants were not entitled to the proceeds of the note because she was mistaken about the nature of the property. Ray Todd testified that he relied on Barbara's representations involving the distribution of life estate assets until she refused to distribute the proceeds from the note on the Garrett property in April 2010, when the release of lien was filed. Thus, it was in April 2010 that Ray Todd "became suspicious that [Barbara] had not been honest with [him] and [his] siblings about the assets [they] should have received from [their] grandparents' estates."

*Actualities of Relationship*

Barbara married Appellants' father in 1994. She testified that when they married, there were "hard feelings" between Appellants and their father. In an effort to improve Appellants' relationship with their father, Barbara invited the family together for the "first. Christmas," and "encouraged Vicky [Appellant Victoria Ray Vanderpool] to bring her friend [even though] Ray was opposed to that." Barbara "counseled" with Appellant Janis Claire Stark after her daughter was born with a cleft palate because "Jan" "felt like it was [due to something she had done]." Barbara was not sure whether her efforts improved the children's relationship with their father, but she confirmed that it was her desire to help and that she attempted to develop a trust relationship with Appellants as a way to improve their relationship with Ray. Barbara testified that she counseled with Appellants on "spiritual matters" over the telephone, but not on a regular basis.

Although Barbara testified that she thought she had a trust relationship with Appellants, she testified further that Ap-

pellants "stopped calling" her after Ray's death. She confirmed that she spoke with Ray Todd Vanderpool about financial matters and purchasing a vehicle, and he did not charge her for his advice. Barbara testified that after Ray's death, Jan called her "one time," and that although there was no direct hostility, she felt a degree of "unfriendliness" from Appellants. Barbara further explained that she felt her relationship with Victoria had ended because she called to speak to Victoria after she had surgery, but Victoria never returned her phone call. Barbara also testified that after she told Ray Todd that Appellants were not entitled to the payoff of a note that Barbara had earlier (and mistakenly) believed was life estate property, he "never called again."

There are no other references in the summary judgment record about Barbara's relationship with Appellants. It is undisputed that prior to Ray's death, Barbara reached out to Appellants when she married Ray in 1994 in order to improve Appellants' relationship with their father. Despite Barbara's reaching out and infrequent discussions on the telephone with Appellants on spiritual or personal matters, there is no evidence that Appellants had grown "accustomed to being guided" by Barbara's judgment or advice prior to their father's death. *See Trostle,* 77 S.W.3d at 914.

Appellants' injury in this case is due to their inaction purportedly arising out of Barbara's representations involving the distribution of life estate assets. However, Appellants' testimony shows that they relied on Barbara's representations involving the distribution of life estate assets, not because they had a close, personal relationship with her, but because she was appointed executrix of their father's estate and "would know of any other property that she and [their] father enjoyed during

his lifetime." The parties' relationship involved some degree of trust, but is not sufficient to create a fiduciary relationship. *See Meyer,* 167 S.W.3d at 330; *Smith v. Deneve,* 285 S.W.3d 904, 912 (Tex.App.-Dallas 2009, no pet.) (longstanding relationship where man and woman cohabitated and had checking accounts with right of survivorship does not establish informal fiduciary relationship); *Trostle,* 77 S.W.3d at 914.

*Responsibility of Diligent Inquiry*

■ Even if a relationship of trust and confidence did exist, Appellants were still required to exercise diligence in protecting their remainder interest in the life estate assets. *See Johnson,* 737 S.W.2d at 70. The exercise of diligence is generally a question of fact, but if the evidence is such that reasonable minds could not differ as to its effect, it becomes a question of law. *See Conoco,* 14 S.W.3d at 328.

Victoria testified that she was aware of her father's "financial irresponsibility" and believed that the life estate assets "had been used up." But there is no evidence that Victoria, or any of the other appellants, made any actual inquiries of Barbara, or anyone else, about the existence of any property in which they acquired a remainder interest under their grandparents' wills.

During her deposition, Barbara was asked why she did not provide Appellants a list of assets following their father's death other than the inventory filed in the probate court. She responded that Appellants "never ask[ed]. They never came to me. They never called me. No. I would have given them the list had they ask[ed]. I gave them everything that I could give them."

*Conclusion*

■ After reviewing the circumstances and nature of Appellants' injury, the actu-

alities of their relationship with Barbara, and the diligence Appellants used to protect their remainder interest, we conclude that Appellants' injury was not of the type that is inherently undiscoverable. *See S.V.*, 933 S.W.2d at 7–8; *Thigpen*, 363 S.W.2d at 253. Appellants were on notice by their grandparents' probate records that they would have no recourse if their remainder interest in life estate property was wasted, injured, damaged, depreciated, destroyed, or lost by their father, the life tenant. *See* Tex. Est.Code Ann. § 22.018(1); *Mooney*, 622 S.W.2d at 85. But they failed to exercise diligence in identifying what life estate property existed at the time of Ray's death. *See Conoco*, 14 S.W.3d at 328; *Hunt Oil Co. v. Live Oak Energy, Inc.*, 313 S.W.3d 384, 392 (Tex.App.-Dallas 2009, pet. denied) ("Failing to even ask ... is not due diligence.") (quoting *Via Net*, 211 S.W.3d at 314).

As a result, the discovery rule does not apply to defer Appellants' cause of action for conversion of the Krugerrands. Therefore, the trial court did not err in granting summary judgment on Appellants' cause of action for conversion of the Krugerrands based on the inapplicability of the discovery rule. Because Barbara was not a fiduciary, and therefore did not owe Appellants a fiduciary duty, the trial court did not err in granting summary judgment on Appellants' cause of action for breach of fiduciary duty. We overrule Appellants' second subissue.

### FRAUDULENT CONCEALMENT

In their third subissue, Appellants contend that the trial court erred in granting summary judgment on Barbara's limitation defense because they produced sufficient evidence to raise material issues of fact as to each element of fraudulent concealment. Because we have concluded that a fiduciary relationship did not exist

between Barbara and Appellants, we limit our discussion to Appellants' cause of action for conversion of the Krugerrands. *See* Tex.R.App. P. 47.1.

### *Applicable Law*

Fraudulent concealment is a fact-specific, equitable doctrine. *Shell Oil*, 356 S.W.3d at 927. It is an affirmative defense to limitations based on the rationale that a person cannot avoid liability for her actions by deceitfully concealing wrongdoing until limitations has run. *See id.* (quoting *S.V.*, 933 S.W.2d at 6). The fraudulent concealment doctrine tolls the limitations period only until "the fraud is discovered or could have been discovered with reasonable diligence." *BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 67 (Tex. 2011) (citations omitted). Under this doctrine, a plaintiff must establish an underlying wrong, and that (1) the defendant actually knew the plaintiff was in fact wronged, and (2) concealed that fact to deceive the plaintiff. *Id.*; *see also Shell Oil*, 356 S.W.3d at 927. In the summary judgment context, a party asserting fraudulent concealment as an affirmative defense to limitations must come forward with evidence raising a fact issue on each element of the fraudulent concealment defense. *KPMG*, 988 S.W.2d at 749.

### *Discussion*

Appellants argue that Barbara is estopped from raising the affirmative defense of limitations because she "was under a duty to make a disclosure but fraudulently concealed" her conversion of Krugerrands from them. According to Appellants, the underlying wrong as it applies to their cause of action for conversion of the Krugerrands occurred when Barbara sold "73 of the gold Krugerrands on or about October 10, 2007 ... and used the cashier['] s check she received to make a down payment on her house."

Early in Barbara's deposition, she testified that Ray had told her some of his property was "life estate" property. But she also stated that they never had a specific conversation in which he identified the nature of all the property that he and Barbara enjoyed the use of during his lifetime. Barbara testified that Appellants' "Uncle Jamie" led her to believe that everything except for the house that she lived in was life estate property. Barbara was asked in her deposition to identify property valued at more than one thousand dollars that she understood Ray had "either by ownership or by life estate, in other words, the right to use during his lifetime." Barbara responded, "All right. The guns. He had gold, which he had given to me specifically...." Barbara testified that she did not know Ray inherited a life estate in the Krugerrands, and that Ray and their financial advisor told her the "gold was mine."

Barbara's 2007 joint tax return includes a statement that she acquired 86 ounces of gold on March 1, 2007 (the date of Ray's death). Barbara and Ray's financial advisor prepared the 2007 tax return. Barbara testified that she had acquired the gold on March 1, 2007, because Ray had given it to her "I guess when he died. He told me it would be mine." The Krugerrands were not listed on Ray's inventory, however, and when asked to explain why they were not listed, Barbara testified "I don't know. I didn't understand at the time."

Barbara told Appellants' Uncle Jamie that she wanted to sell the Krugerrands and asked him to go with her to Dallas where she planned to sell them. Barbara testified that Jamie knew she was selling the Krugerrands and it was understood that they were the ones Barbara had gotten from Ray. At no point did Jamie tell Barbara the Krugerrands belonged to "the kids." Barbara later used the money she received from the Krugerrands as a down payment on her house.

Barbara's deposition testimony shows that she never consulted with Appellants to determine the nature of various real and personal property that had been in Ray's possession. However, Barbara's deposition testimony and Appellants' affidavits also show that Appellants never asked Barbara about the life estate property in which they held a remainder interest.

Appellants contend that Barbara understood the nature of a life estate but chose to plead ignorance when advantageous and sought advice in representing Ray's estate "only when personally profitable." However, Appellants do not cite to any evidence in the record that raises a question of fact regarding whether Barbara "actually knew" Appellants were wronged when she sold the Krugerrands after Ray's death. *See BP,* 342 S.W.3d at 67.

Appellants contend that Barbara concealed any suspicious distribution, or lack thereof, of life estate assets by stating that she did not know what she was going to live on and by forwarding royalties and payments to Appellants. Appellants argue that their "[f]ailure to make inquiry which would reveal the existence of a fraud" is excused because they shared a relationship of trust and confidence with Barbara and because Barbara's representations "conceal[ed] any suspicious circumstances" involving the distribution of life estate assets.

As support for this argument, Appellants direct us to *Trinity–Universal Insurance Co. v. Maxwell,* 101 S.W.2d 606 (Tex.Civ.App.-Austin 1937, writ dism'd w.o.j.). In *Trinity,* the plaintiff sued a Texas corporation for fraud alleged to have been perpetrated upon him in the sale of its stock. *Id.* at 608. The corporation argued that the statute of limitations barred the plaintiff's claims because he

came into possession of facts more than two years before he filed suit that disclosed the falsity of statements he had previously relied upon. *Id.* at 609. Thus, the corporation contended that had the plaintiff exercised reasonable prudence and pursued the information he had, his investigation would have revealed the falsity. *Id.* The court rejected the corporation's argument on the basis that officers and directors of a corporation have a fiduciary relationship with its stockholders, and excused the plaintiff's lack of inquiry due to the "relationship of trust and confidence" between the parties. *Id.* at 611. Failure to inquire, the court stated, is also excused when the conduct or continued representations of the guilty party lull the injured party into a sense of security or conceal any suspicious circumstances. *Id.*

The Austin court's holding is inapplicable in this case because it does not involve a cause of action for conversion and implicitly concerns the application of the discovery rule to a cause of action for fraud where a fiduciary relationship existed. *See generally id.* Moreover, Appellants failed to raise a genuine issue of material fact on every element of their fraudulent concealment defense, and thus their diligence is not an issue we need to consider. TEX. R. APP. P. 33.1; *KPMG*, 988 S.W.2d at 749.

The summary judgment evidence does not raise a genuine issue of material fact that Barbara "actually knew" Appellants were wronged when she sold the Krugerrands. *See BP*, 342 S.W.3d at 67; *Shell Oil*, 356 S.W.3d at 927. As a result, the doctrine of fraudulent concealment does not apply to toll the limitations period for Appellants' cause of action for conversion of the Krugerrands. *See id.*; *KPMG*, 988 S.W.2d at 749. Thus, the trial court did not err in granting summary judgment on Appellants' cause of action for conversion of the Krugerrands based on the inapplicability of the doctrine of fraudulent concealment. Accordingly, we overrule Appellants' third issue.

## OTHER CAUSES OF ACTION AND REMEDIES

In their brief, Appellants challenge the trial court's order granting Barbara's motion for summary judgment on "each" of their causes of action. We note that in Barbara's motion for partial summary judgment, she contended that Appellants' causes of action for conversion and breach of fiduciary duty were time-barred, mentioned that constructive trust was a remedy and not a cause of action, and stated that she was not seeking summary judgment on Appellants' claim for an accounting. Appellants subsequently amended their petition adding fraud and breach of confidential relationship as causes of action and then responded to Barbara's motion for partial summary judgment. In their first amended response, Appellants clarified that their alleged causes of action were for conversion, breach of fiduciary duty, and fraud. They also raised the discovery rule and the doctrine of fraudulent concealment as defenses to Barbara's assertion of limitations.

In Barbara's reply to Appellants' first amended response, she argued that the discovery rule and the doctrine of fraudulent concealment did not apply to Appellants' causes of action for conversion and breach of fiduciary duty. However, she did not address the application of the discovery rule or the doctrine of fraudulent concealment to Appellants' cause of action for fraud. Nor did she raise limitations as a defense to Appellants' cause of action for fraud.

The trial court's order granting Barbara's motion for partial summary judgment directed that Appellants take nothing by their causes of action for "conversion,

breach of fiduciary duty, accounting and a constructive trust." The order was signed on August 8, 2012. On August 27, 2012, Appellants filed a motion to reconsider the order granting Barbara's motion for partial summary judgment. On August 28, 2012, Barbara filed a motion to modify the trial court's order granting her motion for partial summary judgment. In her motion, she requested that the trial court modify its order to include Appellants' cause of action for fraud.

Appellants did not respond to Barbara's motion to modify. The trial court granted the motion and amended its order to direct that Appellants "take nothing by their causes of action for fraud, conversion, breach of fiduciary duty, accounting and a constructive trust...."

■■ By its amended order, the trial court granted more relief than Barbara requested in her motion for partial summary judgment. Generally, this kind of excessive relief is reversible error. *See Nall v. Plunkett*, 404 S.W.3d 552, 555 (Tex. 2013) (citations omitted) ("A trial court cannot grant summary judgment on grounds that were not presented."). But Appellants failed to object to Barbara's motion to modify at the trial court, and do not argue here that the trial court improperly granted relief not requested by Barbara's motion for partial summary judgment. As a result, this error is waived. *See* Tex.R.App. P. 33.1; *San Jacinto River Auth. v. Duke*, 783 S.W.2d 209, 209–10 (Tex.1990) (per curiam) ("A court of appeals may not reverse a trial court's judgment in the absence of properly assigned error."); *see, e.g., Zertuche v. Bexar County*, No. 04–08–00895–CV, 2009 WL 2183631, at *1 n. 1 (Tex.App.-San Antonio July 22, 2009, pet. denied) (mem. op.) ("[W]e note that the trial court's order grants more relief than requested which would typically result in a partial reversal

of the trial court's order[, but] Zertuche was required to bring forward a point of error complaining of the [excessive relief], or, at the very least, argue in his brief that excess relief was improperly granted.... Because Zertuche did not raise this complaint in his brief, it is waived.") (citations omitted).

### DISPOSITION

Having sustained Appellants' first subissue, we *reverse* the trial court's judgment granting Barbara's motion for partial summary judgment as it pertains to Appellants' cause of action for conversion of the King note proceeds. In all other respects, we *affirm* the judgment of the trial court. *See* Tex.R.App. P. 43.2(a). We *remand* the case for further proceedings consistent with this opinion. *See* Tex.R.App. P. 43.2(d).