# NO. 12-20-00080-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JOHN W. SLOANE,*<br>*APPELLANT* | § | *APPEAL FROM THE 145TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *KARL BRISCO,*<br>*APPELLEE* | § | *NACOGDOCHES COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

John W. Sloane filed a motion for rehearing, which is overruled. We withdraw our November 18, 2020 opinion and judgment and substitute the following opinion and judgment in their place.

Sloane appeals the trial court's judgment and award rendered in favor of Appellee Karl Brisco. Sloane raises three issues on appeal. We modify and affirm as modified.

## BACKGROUND

Sloane owns a remote, rural tract of land in Nacogdoches County, Texas. Several of his family members own adjacent tracts. In January 2013, Sloane entered into a written agreement with Brisco wherein Brisco agreed to perform logging operations on Sloane's land. In February 2013, all of Brisco's equipment suffered mechanical failure as a result of defective oil used in the equipment. Consequently, he ceased the logging operation prior to its completion.

Brisco's numerous pieces of substantially sized logging equipment remained on Sloane's property for a period of years after the operation ceased. During that time, several members of Sloane's family contacted Brisco to inquire about whether he intended to move the equipment off the property. Brisco consistently responded that he intended to move the equipment soon. During

this time, Brisco occasionally requested and was granted access to the property and his equipment through a locked gate.

As time passed and the equipment remained on the property, Sloane began to consider whether, due to the length of time the equipment had remained on the property, he had a right to sell it. On or about February 21, 2015, Sloane negotiated the sale of the equipment to David Alexander. Pursuant to the written agreement and bill of sale, Sloane was required to notify Brisco of the sale within thirty days. However, Sloane made no attempt to notify Brisco of the sale. Thereafter, Alexander sold the equipment to Paul Gates. In March 2017, Brisco contacted Michael Kimbrough, Sloan's cousin, to get the gate code so he could access the equipment because he was considering selling it. Kimbrough informed him that the equipment no longer was on the property and to contact Sloane about the matter.

On June 15, 2017, Brisco filed the instant suit against Sloane and Alexander, in which he alleged that they were liable to him for, among other things, conversion, unjust enrichment, and fraud. Sloane answered and pleaded that Brisco's claims for conversion and unjust enrichment were barred by the applicable statute of limitations. Subsequently, Brisco pleaded that the discovery rule served to defer the accrual of these causes of action. Gates later filed a plea in intervention. The matter proceeded to trial, at the conclusion of which the jury found that Sloane and Alexander were liable to Brisco for conversion and that Sloane also was liable to him for unjust enrichment and fraud.[1] With regard to Brisco's conversion cause of action, the jury made separate awards in differing amounts for the fair market value of the equipment converted by Sloane and, later, by Alexander. It further awarded damages to Brisco from Sloane for unjust enrichment. However, despite its having found Sloane liable for fraud by nondisclosure, the jury awarded Brisco no damages for this cause of action.

After the jury's verdict, but before the trial court rendered its judgment, Brisco entered into a written settlement agreement with Alexander and Gates, by which he resolved his claims against them for $13,000.00. Thereafter, Sloane filed a motion to modify the judgment, in which he requested that the trial court apply a settlement credit against the damages for which he was

---

[1] The court's charge also contained questions on the application of the discovery rule to Brisco's conversion and unjust enrichment causes of action. In response to these questions, the jury answered that the date by which Brisco, in the exercise of reasonable diligence, should have discovered the sale of his property was August 21, 2015.

2

responsible. The trial court denied this request and entered judgment against Sloane in accordance with the jury's verdict. This appeal followed.

## APPLICABILITY OF THE DISCOVERY RULE

In his first issue, Sloane argues that the discovery rule is inapplicable to Brisco's conversion and unjust enrichment claims as a matter of law because it does not apply to the type of injury suffered by Brisco. Thus, he contends that the trial court abused its discretion in submitting charge questions on the application of the discovery rule to these causes of action and otherwise erred in overruling his motion for judgment notwithstanding the verdict on the same underlying basis.

### Standards of Review

We review alleged jury charge error for abuse of discretion. *See **Shupe v. Lingafelter***, 192 S.W.3d 577, 579 (Tex. 2006); ***Allstate Ins. Co. v. Hunter***, 242 S.W.3d 137, 139 (Tex. App.–Fort Worth 2007, no pet.). The trial court has broad discretion in submitting jury questions so long as the questions submitted fairly place the disputed issues before the jury. ***Hunter***, 242 S.W.3d at 139; ***Toles v. Toles***, 45 S.W.3d 252, 263 (Tex. App.–Dallas 2001, pet. denied). This broad discretion is subject only to the limitation that controlling issues of fact must be submitted to the jury. TEX. R. CIV. P. 278; ***Hunter***, 242 S.W.3d at 140. A trial court abuses its discretion by acting arbitrarily, unreasonably, or without consideration of guiding principles. *See **Downer v. Aquamarine Operators, Inc.***, 701 S.W.2d 238, 241–42 (Tex. 1985).

A motion notwithstanding the verdict is proper when a directed verdict would have been proper. *See* TEX. R. CIV. P. 301; ***CDB Software, Inc. v. Kroll***, 992 S.W.2d 31, 35 (Tex. App.–Houston [1st Dist.] 1998, pet. denied). The motion should be granted when (1) the evidence is conclusive, and one party is entitled to recover as a matter of law or (2) a legal principle precludes recovery. *See **McCullough v. Scarbrough, Medlin & Assocs.***, 435 S.W.3d 871, 885 (Tex. App.–Dallas 2014, pet. Denied); ***Kroll***, 992 S.W.2d at 35. We review a determination that a legal principle precludes recovery under a de novo standard. ***Hardin v. Obstetrical & Gynecological Assocs. P.A.***, 527 S.W.3d 424, 435 (Tex. App.–Houston [1st Dist.] 2017, pet. denied).

Despite these differing standards of review, Sloane's first issue consists of a singular argument—the discovery rule does not apply to the type of injury suffered by Brisco. Thus, if the trial court abused its discretion in submitting charge questions on this issue, it likewise erred in

overruling his motion for judgment notwithstanding the verdict on this basis. *See St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 525 (Tex. 2003) (in preparing charge, trial courts have no discretion to misstate law); *Hardin*, 527 S.W.3d at 435.

**<u>Governing Law</u>**

The primary purpose of statutes of limitations is to compel the exercise of a right of action within a reasonable time so that the opposing party has a fair opportunity to defend while witnesses are available and the evidence is fresh in their minds. *LaGloria Oil and Gas Co. v. Carboline Co.*, 84 S.W.3d 228, 234 (Tex. App.–Tyler 2001, pet. denied). It is in society's best interest to grant repose by requiring that disputes be settled or barred within a reasonable time. *Id.*

Ordinarily, a cause of action accrues when a wrongful act causes a legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred. *See S.V. v. R.V.*, 933 S.W.2d 1, 3 (Tex. 1996); *see also Li v. Univ. of Tex. Health Sci. Ctr. at Houston*, 984 S.W.2d 647, 651 (Tex. App.–Houston [14th Dist.] 1998, pet. denied). The discovery rule is the legal principle which, when applicable, provides that limitations run from the date the plaintiff discovers or should have discovered, in the exercise of reasonable care and diligence, the nature of the injury. *See Childs v. Haussecker*, 974 S.W.2d 31, 40 (Tex. 1998); *Willis v. Maverick*, 760 S.W.2d 642, 644 (Tex. 1988). Discovering the "nature of the injury" requires knowledge of the wrongful act and the resulting injury. *See Childs*, 974 S.W.2d at 40. The discovery rule applies only when the nature of the plaintiff's injury both is inherently undiscoverable and objectively verifiable. *Clark v. Dillard's, Inc.*, 460 S.W.3d 714, 721 (Tex. App.–Dallas 2015, no pet.) (citing *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734 (Tex. 2001)).

"Inherently undiscoverable" does not mean that the plaintiff failed to discover the injury within the limitations period. *Horwood*, 58 S.W.3d at 735. Instead, we determine whether an injury is inherently undiscoverable on a categorical basis because such an approach brings predictability and consistency to the jurisprudence. *Id.* The focus is on whether a type of injury, rather than a particular injury, was discoverable. *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 314 (Tex. 2006). An injury is inherently undiscoverable if, by its nature, it is unlikely to be discovered within the limitations period despite due diligence. *Id.* at 313. Thus, the question is whether Brisco's injury is the type of injury that generally is discoverable by the exercise of reasonable diligence. *See Wagner & Brown*, 58 S.W.3d at 735. A wrong or injury is not inherently undiscoverable if it "generally is capable of detection within the time allotted for bringing such

suits." ***Computer Assocs. Int'l, Inc. v. Altai, Inc.***, 918 S.W.2d 453, 457 (Tex. 1996). Whether an injury is inherently undiscoverable is a legal question "decided on a categorical basis rather than case-specific basis." ***Via Net***, 211 S.W.3d at 314.

Conversion is the wrongful assumption and exercise of dominion and control over the personal property of another to the exclusion of, or inconsistent with, the owner's rights. ***Burns v. Rochon***, 190 S.W.3d 263, 267–68 (Tex. App.–Houston [1st Dist.] 2006, no pet.). A cause of action for conversion must be commenced no later than two years after its accrual. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.003 (West 2017). Unjust enrichment occurs when the defendant wrongfully has secured or passively has received a benefit from another that would be unconscionable to retain, and the defendant obtained the benefit from the plaintiff by fraud, duress, or the taking of an undue advantage. ***Clark***, 460 S.W.3d at 720. A cause of action for unjust enrichment also must be commenced no later than two years after its accrual. *See **Elledge v. Friberg-Cooper Water Supply Corp.***, 240 S.W.3d 869, 870 (Tex. 2007). Here, the type of injury suffered by Brisco—the lost value of equipment sold by Sloane and, later, by Alexander without his knowledge—is the same for both his conversion and unjust enrichment causes of action. Thus, we consider together his argument regarding the trial court's submission of discovery rule questions in its charge in conjunction with each of these claims. *See **Via Net***, 211 S.W.3d at 314.

In cases of conversion, the statute of limitations generally begins to run at the time of the unlawful taking. ***Burns***, 190 S.W.3d at 271; ***Republic Supply Co. v. French Oil Co.***, 392 S.W.2d 462, 464–65 (Tex. Civ. App.–El Paso 1965, no writ). However, the discovery rule has been applied in certain conversion cases in which possession initially is lawful. *See **Burns***, 190 S.W.3d at 271 (discovery rule applied when landlord's possession of property leased to tenant by third party because landlord lawfully locked tenant out of real property on which personal property located due to dispute over rent) (citing ***Hofland v. Elgin–Butler Brick Co.***, 834 S.W.2d 409, 414 (Tex. App.–Corpus Christi 1992, no writ) (discovery rule applied where property placed in possession of bailor and secretly sold because true owner has no reason to know of conversion)). When the discovery rule applies, the cause of action accrues "upon demand and refusal, or discovery of facts supporting the cause of action, whichever occurs first." ***Burns***, 190 S.W.3d at 271.

**Discussion**

In the instant case, Sloane argues that the discovery rule is inapplicable to Brisco's conversion and unjust enrichment causes of action because the nature of the type of injury in the instant case is not inherently undiscoverable.[2] We disagree.

As set forth previously, the discovery rule has been applied to defer the accrual of limitations on causes of action arising from conversion when the evidence supported that the defendant's initial possession of the subject property was lawful. *See Burns*, 190 S.W.3d at 271. In *Hofland*, for example, the initial, lawful possession resulted from a bailor-bailee relationship. *See Hofland*, 834 S.W.2d at 414. A bailment requires (1) the delivery of property by one person to another for a specific purpose, (2) acceptance of the delivery of the property by the transferee, (3) an agreement, express or implied, that the purpose will be fulfilled, and (4) an understanding that the property will be returned to the transferor. *See DeLaney v. Assured Self Storage*, 272 S.W.3d 837, 839 (Tex. App.–Dallas 2008, no pet.). Furthermore, a constructive bailment arises where a person lawfully has acquired possession of personal property of another and holds it under circumstances, whereby he should, on principles of justice, keep it safely and restore it or deliver it to the owner). *See, e.g.*, *In re Ramirez*, No. 12-34472, 2014 WL 2522148, at *7 (Bankr. S.D. Tex. Jun. 4, 2014).

Here, Sloane and Brisco had a written agreement, pursuant to which Brisco would conduct logging operations on Sloane's land. Throughout the logging operations, Brisco left the logging equipment on Sloane's property when it was not in use. Sloane testified that during logging operations, he considered the equipment to be in his possession when it was left on his property unattended. After the logging operations ceased, Brisco left the equipment on Sloane's land for a period of years. And though Brisco testified that he intended to complete the operation pursuant to his agreement with Sloane when the equipment again was operational, there is no evidence that he took any steps toward repairing his equipment or reviving his logging business. While the inoperable equipment was parked on Sloane's property following cessation of the logging activities, the record indicates that there were few instances where Brisco came to the property to inspect it or otherwise exhibit any sort of control over it. Furthermore, when he did access the

---

[2] We agree with Sloane's concession in his brief that the nature of the injury in this case is objectively verifiable.

property, he had to contact Kimbrough to get the gate access code.[3] Thus, the equipment remained on Sloane's property and in his possession a vast majority of the time between the cessation of logging operations and its sale to Alexander, and Brisco's vague statements to Sloane's family members about his intent to remove the equipment at some future date did not alter this fact. As a result, we conclude that Sloane's possession of the logging equipment was akin to a constructive bailment and, thus, initially was lawful. *See Hofland*, 834 S.W.2d at 414; *see also DeLaney*, 272 S.W.3d at 839; *Ramirez*, 2014 WL 2522148, at *7.[4]

Furthermore, the evidence of record supports the trial court's determination that the injury Brisco suffered is the type and of the category that generally would not be discoverable by the exercise of reasonable diligence. First, the evidence conclusively establishes that the several pieces of logging equipment in question were large, heavy, and nonfunctioning. As a result, they were difficult and expensive to move.[5] Further still, there is no dispute that Sloane's land was in a remote location and protected by a locked access gate.

Sloane points out that there was testimony about the pitfalls of letting logging equipment sit idle for extended periods and that a reasonable owner of such equipment would, at a minimum, check on it at least once per month and operate it to lubricate the engine seals. However, this testimony does not address the reasonableness of an owner's attentiveness in Brisco's situation since his equipment had been inoperable and immobile for two years when Sloane sold it. Thus,

---

[3] Sloane's daughter, Scarlette Long, testified that the coded gate lock often was cut by persons who sought to access the property to work on the pipeline running underneath it. As a result, the lock would be changed and with it, the gate code often changed as well. Long further testified that the gate access code freely was given to Brisco.

[4] In *Vanderpool v. Vanderpool*, 442 S.W.3d 756 (Tex. App.–Tyler 2014, no pet.), this court declined to apply the discovery rule to a conversion claim. However, our holding in *Vanderpool* is distinguishable from the instant case. There, in an appeal from summary judgment, the determination of whether the discovery rule applied rested on the existence of a fiduciary relationship and whether the appellants conducted a diligent inquiry to protect their remainder interest in life estate property. *See id.* at 765–66. We held that the facts and circumstances in that case did not support the existence of a fiduciary relationship, despite the fact that the parties' relationship involved some degree of trust. *Id.* at 767. We further determined that Appellants, as a matter of law, failed to exercise reasonable diligence to discover the existence of any remainder interest in the life estate property where the summary judgment evidence established that they had not seen the property for years prior to their father's death and, thereafter, failed to inquire of its existence for over three years. *Id.* at 763, 766–67. Here, the application of the discovery rule is based on evidence demonstrating a relationship akin to a bailor-bailee relationship between Sloane and Brisco, wherein Sloane's possession of the inoperable equipment initially was lawful. Furthermore, the issue of whether Brisco exercised reasonable diligence was a fact question, which the jury resolved and which has not been challenged on appeal. *See Conoco, Inc. v. Amarillo Nat. Bank*, 14 S.W.3d 325, 328 (Tex. App.–Amarillo 2000, no pet.).

[5] Gates testified that it cost him approximately $2,400 to move the equipment off Sloan's property and doing so took nearly two weeks to accomplish.

the trial court reasonably could have determined that Brisco's need to check on his equipment to ensure its continued operability was less dire since any damage resulting from lack of use likely already had occurred.

Moreover, Sloane never demanded that Brisco remove his equipment from the property. The record does indicate that several of Sloane's family members, who were adjacent property owners, contacted Brisco to ask when he planned to move the equipment, only to be assured by Brisco that he would move it soon. But there is no indication that any of these people went so far as to demand that the equipment be moved or that they indicated to Brisco that they were speaking on Sloane's behalf. And while it is arguable that a diligent owner of such equipment would interpret these communications as a strong indication that he should make a concerted effort to move the equipment, Brisco testified that during this time, he had not yet decided to dissolve his logging business. To be sure, his contract with Sloane never was repudiated, and, thus, Brisco reasonably was entitled to believe that his equipment would not be removed from Sloane's property since he had a contractual obligation to complete the logging operation. Indeed, Brisco testified that it never was his intent not to complete the logging operations on Sloane's property.

Lastly, it is undisputed that Brisco and Scarlette Long, Sloane's daughter, were involved in a dating relationship in the months leading up to the logging operation. Brisco testified that, during that time, he attended family events with Long and became acquainted with Sloane. He further testified that he and Long remained friends when their dating relationship ended and communicated with some frequency. Doubtlessly, Brisco's interpersonal relationship with Long did not create any legal duty between him and Sloane. But the trial court reasonably could have considered that Brisco's relationship with Long contributed to his belief that his equipment safely would remain on Sloane's property as yet another reason why Brisco's exercise of reasonable diligence should not require that he regularly monitor the location of his logging equipment.

Based on our review of the record, we hold that the nature of the type of injury Brisco suffered in the instant case is inherently undiscoverable and, as a result, the discovery rule applies to Brisco's conversion and unjust enrichment causes of action. Therefore, the trial court's decision to submit discovery rule questions to the jury on Brisco's conversion and unjust enrichment claims did not result in an abuse of its discretion, nor did it err in overruling Slone's motion for judgment

8

notwithstanding the verdict.[6]  *See Downer*, 701 S.W.2d at 241–42; *see also Wolff*, 94 S.W.3d at 525; *Hardin*, 527 S.W.3d at 435.

**SETTLEMENT CREDIT**

In his third issue, Sloane argues that he is entitled to a settlement credit under the "one-satisfaction" rule.

**Standard of Review and Governing Law**

We review the trial court's application of the one-satisfaction rule de novo.  *See Sky View at Las Palmas, LLC v. Mendez*, 555 S.W.3d 101, 108 (Tex. 2018).

"Under the one satisfaction rule, a plaintiff is entitled only to one recovery for any damages suffered."  *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 390 (Tex. 2000); *see also Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 7 (Tex. 1991) ("The one satisfaction rule applies to prevent a plaintiff from obtaining more than one recovery for the same injury").  The rule is one of general acceptation that an injured party is entitled to but one satisfaction for the injuries sustained by him.  *See Mendez*, 555 S.W.3d at 107.  That rule is in no sense modified by the circumstance that more than one wrongdoer contributed to bring about his injuries.  *Id.*  There being but one injury, there can, in justice, be but one satisfaction for that injury.  *Id.*

The fundamental consideration in applying the one-satisfaction rule is whether the plaintiff has suffered a single, indivisible injury—not the causes of action the plaintiff asserts.  *See Stewart Title*, 822 S.W.2d at 8.  That is, "[t]here can be but one recovery for one injury, and the fact that more than one defendant may have caused the injury or that there may be more than one theory of liability, does not modify this rule."  *Id.*  Thus, the rule applies both "when the defendants commit the same act as well as when defendants commit technically differing acts which result in a single injury."  *Id.* at 7.

The supreme court has explained the rule's rationale, as it applies to settlement credits for nonsettling defendants, as follows:

> [T]he plaintiff should not receive a windfall by recovering an amount in court that covers the plaintiff's entire damages, but to which a settling defendant has already partially contributed.  The plaintiff would otherwise be recovering an amount greater than the trier of fact has determined would fully compensate for the injury.

---

[6] Because we have overruled Sloane's first issue, we do not consider his second issue regarding whether he, as a result of fraud, is estopped from relying on limitations as an affirmative defense.  *See* TEX. R. APP. P. 47.1.

*First Title of Co. of Waco v. Garrett*, 860 S.W.2d 74, 78 (Tex. 1993).

A nonsettling defendant seeking a settlement credit under the one-satisfaction rule has the burden to prove its right to such a credit. *Utts v. Short*, 81 S.W.3d 822, 828 (Tex. 2002); *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 927 (Tex. 1998). A nonsettling defendant meets this burden by introducing into the record either the settlement agreement or some other evidence of the settlement amount. *Ellender*, 968 S.W.2d at 927; *see also Utts*, 81 S.W.3d at 828. "Once the nonsettling defendant demonstrates a right to a settlement credit, the burden shifts to the plaintiff to show that certain amounts should not be credited because of the settlement agreement's allocation." *Utts*, 81 S.W.3d at 828. The plaintiff can rebut the presumption that the nonsettling defendant is entitled to settlement credits by presenting evidence showing that the settlement proceeds are allocated among defendants, injuries, or damages such that entering judgment on the jury's award would not provide for the plaintiff's double recovery. *See id.* at 828–29 (requiring nonsettling plaintiff to show that it did not benefit from settlement); *Casteel*, 22 S.W.3d at 391–92 (requiring showing of allocation between joint and separate damages); *Ellender*, 968 S.W.2d at 928 (requiring showing of allocation between actual and punitive damages); *First Title*, 860 S.W.2d at 79 (applying one-satisfaction rule when the plaintiff did not show it settled for separate injury). A written settlement agreement that specifically allocates damages to each cause of action will satisfy this burden. *Mendez*, 555 S.W.3d at 108; *Ellender*, 968 S.W.2d at 928; *see also First Title*, 860 S.W.2d at 79 (examining contents of settlement agreement).

"[A] nonsettling party should not be penalized for events over which it has no control." *Utts*, 81 S.W.3d at 829 (citing *Ellender*, 968 S.W.2d at 927). Thus, this burden-shifting framework, based on the presumption that the nonsettling defendant is entitled to a settlement credit after it introduces evidence of the plaintiff's settlement, is appropriate because the plaintiff is "in the best position" to demonstrate why rendering judgment based on the jury's damages award would not amount to the plaintiff's double recovery. *See Utts*, 81 S.W.3d at 829. If the plaintiff fails to satisfy this burden, then the defendant is entitled to a credit equal to the entire settlement amount. *See id.*; *Ellender*, 968 S.W.2d at 928.

**Discussion**

In the instant case, Brisco entered into a written settlement agreement with Alexander and Gates after the jury returned its verdict, but before the trial court entered its final judgment. *See,*

*e.g.*, ***Casteel***, 22 S.W.3d at 390, 391. The trial court rendered its final judgment awarding Brisco a recovery from Sloane for unjust enrichment in the amount of $25,000.00 plus five percent prejudgment interest ($3,101.94)[7] and costs of court ($1,355.39), resulting in a total recovery of $29,457.33. Brisco did not request a judgment against Alexander. Thereafter, Sloane filed a motion to modify the judgment and, subsequently, filed with the court a copy of the settlement agreement between Brisco, Alexander, and Gates.

The settlement agreement sets forth that the parties "have reached an agreement to compromise and settle all claims and controversies between them in the above-styled and numbered action[.]" Brisco stipulated that he received the agreed settlement proceeds of $13,000.00. We observe that the jury found liability and awarded damages against Sloane and Alexander respectively for conversion. The jury also found Sloane liable for unjust enrichment and awarded $25,000.00 in damages on that cause of action, under which Brisco elected to recover. Brisco argues that the damages awarded for unjust enrichment arise from a distinct injury versus those which arose as a result of the conversion. We disagree. *See **Stewart Title***, 822 S.W.2d at 8. The court's charge did not instruct the jury how to calculate damages for unjust enrichment or otherwise tell the jury that the damages for unjust enrichment were distinct from those it awarded for conversion, and no party objected to this question on that basis. *Cf.* ***Khorshid, Inc. v. Christian***, 257 S.W.3d 748, 765 n.6 (Tex. App.–Dallas 2008, no pet.) (appellate court reviews evidence in light of charge submitted to jury when neither party objects to charge at trial). And based on our review of the pleadings and the record, these causes of action undoubtedly arose from the same transaction or occurrence—the sale and resale of Brisco's logging equipment—and the resulting injury to Brisco caused by Sloane and Alexander's conversion of the property as well as the benefit obtained by Sloane in the case of unjust enrichment—the monetary value of the equipment—is the same. Thus, Sloane successfully raised a presumption that he was entitled to a settlement credit of $13,000.00. *See **Mendez***, 555 S.W.3d at 110.

Brisco also contends that since the jury awarded different amounts for conversion as to Sloane and Alexander, despite its being instructed to base its award on market value, it is reasonable for this court to resolve this conflict by concluding that the jury intended that its determination of the full market value of the equipment be reflected by the sum of these two

---

[7] The judgment sets forth that prejudgment interest is awarded at an annual rate of 5.00% beginning June 15, 2017, and ending on December 9, 2019, a period of nine hundred seven days or 2.485 years.

awards. However, the court's charge does not specifically instruct the jury to calculate its award in this fashion and we decline to draw speculative conclusions regarding the jury's thought processes or its intentions in reaching its answers to these two questions. *Cf.* ***Springs Window Fashions Div., Inc. v. Blind Maker, Inc.***, 184 S.W.3d 840, 867 (Tex. App.–Austin 2006, no pet.). Thus, we cannot conclude, based on the jury's answers to the damages questions alone, that Brisco rebutted the presumption of Sloane's entitlement to a settlement credit by demonstrating that the settlement proceeds from Alexander were allocated to an injury or damages different from the one he recovered from Sloane so that his receiving the full jury award would not amount to a double recovery or windfall. *See* ***Mendez***, 555 S.W.3d at 111.

Based on our review of the record, we hold that Sloane is entitled to a settlement credit in the amount of $13,000.00. Accordingly, we will modify the trial court's judgment to reflect the appropriate application of the settlement credit, calculation of prejudgment interest, and total amount owed by Sloane to Brisco. Sloane's third issue is sustained.

## CONCLUSION

We have overruled Sloane's first issue and sustained his third issue. Having done so, we ***modify*** the trial court's judgment by applying a settlement credit to the jury's award in the amount of $13,000.00, thereby reducing the recovery of damages by Brisco from Sloane from $25,000.00 to $12,000.00. Consequently, we further ***modify*** the trial court's judgment by reducing the amount awarded in prejudgment interest from $3,101.94 to $1,491.00.[8] Lastly, we ***modify*** the trial court's judgment by reducing the total amount owed by Sloane to Brisco from $29,457.33 to $14,846.39. We ***affirm*** the trial court's judgment ***as modified***.

**BRIAN HOYLE**
Justice

Opinion delivered December 16, 2020.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

---

[8] The amount of simple interest was calculated by multiplying the principal ($12,000) by the rate of interest (0.05) by the number of years (2.485).

12



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

_DECEMBER 16, 2020

NO. 12-20-00080-CV

**JOHN W. SLOANE,**
Appellant
V.
**KARL BRISCO,**
Appellee

---

Appeal from the 145th District Court

of Nacogdoches County, Texas (Tr.Ct.No. C1732883)

---

THIS CAUSE came to be heard on the oral arguments, appellate record and the briefs filed herein, and the same being considered, because it is the opinion of this court that the judgment of the court below should be modified and as modified, affirmed.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below be **modified** by applying a settlement credit to the jury's award in the amount of $13,000.00, thereby reducing the recovery of damages by Brisco from Sloane from $25,000.00 to $12,000.00. We also **modify** the trial court's judgment by reducing the amount awarded in prejudgment interest from $3,101.94 to $1,491.00. We further **modify** the trial court's judgment by reducing the total amount owed by Sloane to Brisco from $29,457.33 to $14,846.39; in all other respects the judgment of the trial court is **affirmed** and that all costs of this appeal are hereby

13

adjudged against the Appellee, **KARL BRISCO,** in accordance with the opinion of this court; and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*