ACCEPTED
12-14-00302-CV
TWELFTH COURT OF APPEALS
TYLER, TEXAS
3/9/2015 2:47:54 PM
CATHY LUSK
CLERK

NO. 12-14-00302-CV

IN THE TWELFTH COURT OF APPEALS
TYLER, TEXAS

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS
3/9/2015 2:47:54 PM
CATHY S. LUSK
Clerk

CORRINE AUGUSTINE NICHOLS HILL SHEARER

*Appellant*

v.

DAVID SHEARER, INDIVIDUALLY AND AS THE INDEPENDENT ADMINISTRATOR
OF THE ESTATE OF JOHN WILLIAM SHEARER, III

*Appellee*

Appeal from the County Court at Law No. 2
Gregg County, Texas

**BRIEF FOR APPELLANT**

J. CHAD PARKER
cparker@theparkerfirm.net
Bar Card No: 15489000
FORREST F. MAYS
fmays@theparkerfirm.net
Bar Card No: 24072228
THE PARKER FIRM, P.C.
3808 Old Jacksonville Rd.
Tyler, Texas 75701
(903) 595-4541 - telephone
(903) 595-2864 - facsimile

Attorneys for Appellant

**ORAL ARGUMENT REQUESTED**

## IDENTITY OF PARTIES AND COUNSEL

**Appellant/Defendant**

Corrine Augustine Nichols Hill Shearer

**Counsel for Appellant**

**J. CHAD PARKER**
Bar Card No: 15489000
**FORREST F. MAYS**
Bar Card No: 24072228
THE PARKER FIRM, P.C.
3808 Old Jacksonville Rd.
Tyler, Texas 75701

Attorneys for Appellant Corrine Augustine Nichols Hill Shearer

**Appellee/Plaintiff**

David Shearer, Individually, and as Independent Administrator of the Estate of John William Shearer, III

**Counsel for Appellee**

**CARSON RUNGE**
SLOAN, BAGLEY, HATCHER & PERRY
101 East Whaley Street
Longview, Texas 75601
State Bar No. 24059262

i

IDENTITY OF PARTIES AND COUNSEL .................................................................... i

INDEX OF AUTHORITIES ................................................................................iv-v

STATEMENT OF THE CASE ............................................................................ v-vi

ISSUES PRESENTED .........................................................................................vi

1.      Was there legally and factually sufficient evidence that Corrine Shearer owed David Shearer a fiduciary duty?

2.      Was Corrine Shearer entitled to a directed verdict on David Shearer's intentional infliction of emotional distress claim because an alternative tort was available to provide a remedy?

STATEMENT REGARDING ORAL ARGUMENT ....................................................... vii

STATEMENT OF FACTS .............................................................................. 1–7

A.      The Parties' Relationship  ....................... ...............................................1–2

B.      November - December 2009 .................................................................. 3-4

C.      Proceedings in the county court ........................................................... 5-7

SUMMARY OF THE ARGUMENT ...................................................................... 7–8

STANDARD OF REVIEW ................................................................................ 8–9

ARGUMENT..................................................................................... 9–22

I.      The Informal Fiduciary Relationship

A.      When viewing the actualities of the relationship between Corrine Shearer and David Shearer, there was legally insufficient evidence from an objective standpoint that would support the existence of a fiduciary duty. Alternatively, the overwhelming weight of the evidence is to the contrary

        i.      Legal insufficiency

        ii.     Factual insufficiency

B.     There was legally insufficient evidence that David was accustomed to being guided by the judgment or advice of Corrine or that justified his belief that Corrine would act in his best interest. Alternatively, the overwhelming weight of the evidence demonstrated to the contrary and that Corrine only acted in John's best interest.

        i.      Legal insufficiency

        ii.     Factual insufficiency

C.     In comparing the relative positions of the parties, there was legally insufficient evidence that Corrine and David lacked equal footing in the relationship. Alternatively, the overwhelming weight of the evidence showed to the contrary.

        i.      Legal insufficiency

        ii.     Factual insufficiency

II.    Invasion of privacy tort provided adequate theory of recovery for David Shearer's mental anguish and should have barred the submission of intentional infliction of emotional distress claim

CONCLUSION AND PRAYER ................................................................ 22

CERTIFICATE OF COMPLIANCE WITH RULE 9.4(E) ...............................................23

CERTIFICATE OF SERVICE ................................................................23

APPENDIX TO BRIEF OF APPELLANT ................................................................ 24

# INDEX OF AUTHORITIES

**Cases**

*Burroughs Wellcome Co. v. Crye*,
    907 S.W.2d 497 (Tex.1995) ................................................................. 9

*Creditwatch, Inc. v. Jackson*,
    157 S.W.3d 814 (Tex. 2005) ...........................................................18, 19

*Gray v. Sangrey*,
    428 S.W.3d 311 (Tex. App.– Texarkana 2014, pet. denied) ................. 10

*Hoffman-LaRoche, Inc. v. Zeltwanger*,
    144 S.W.3d 438 (Tex. 2004) ............................................................... 19

*Kindred v. Con/Chem, Inc.*,
    650 S.W.2d 61 (Tex.1983) ................................................................... 9

*Lee v. Hasson*,
    286 S.W.3d 1 (Tex. App.– Houston [14th Dist.] 2007, pet. denied) ..... 9

*Lindley v. McKnight*,
    349 S.W.3d 113 (Tex. App.–Fort Worth 2011, no pet.) ........................ 9

*Merrell Dow Pharm., Inc. v. Havner*,
    953 S.W.2d 706 (Tex.1997) ................................................................. 9

*Meyer v. Cathey*,
    167 S.W.3d 327 (Tex.2005) ............................................................ 10, 11

*Pope v. Darcey*,
    667 S.W.2d 270 (Tex. App.– Houston [14th Dist.] 1984,
    writ ref'd n.r.e.) ................................................................................ 10, 16

*Standard Fruit & Veg. Co. v. Johnson*,
    985 S.W.2d 62 (Tex. 1998) ................................................................. 19

*Thigpen v. Locke*,

363 S.W.2d 247 (Tex.1962) ............................................................ 10, 11, 13

*Transp. Ins. Co. v. Moriel*,
     879 S.W.2d 10 (Tex.1994) ..................................................................... 9

*Trostle v. Trostle*,
     77 S.W.3d 908 (Tex. App. – Amarillo 2002, no pet.) ............................. 13

*Vanderpool v. Vanderpool*,
     442 S.W.3d 756 (Tex. App. – Tyler 2014) ............................................ 9–11

**Statutes**

Texas Health & Safety Code 166.039(b) ............................................... v., 5, 20–21

Tex. Health & Safety Code Section 711.002 ................................................... 20

## STATEMENT OF THE CASE

| | |
|---|---|
| *Nature of the case* | David Shearer sued Corrine Shearer in his individual capacity and as the independent administrator of John Shearer's estate under multiple theories asserting that Corrine invaded a right personally belonging to him under Texas Health & Safety Code 166.039(b) by ordering a Do-Not Resuscitate order ("DNR") on his father, John. (CR 62–63) He also asserted a claim, individually, for breach of fiduciary duty on the basis that Corrine owed him a duty and breached it by not advising him that she had entered the DNR on his father. (CR 63–64). David also asserted claims for conversion of John's ashes and claims of intentional infliction of emotional distress. (CR 64–65). David sought mental anguish damages only, as well as exemplary damages. (CR 66–67). |
| *Trial court* | County Court at Law No. 2, Gregg County Honorable Vincent Dulweber |

*Trial court's disposition*  The jury returned a verdict favorable to David Shearer, Individually, on his claims for breach of fiduciary duty and intentional infliction of emotional distress, awarding him mental anguish damages in the amount of $35,000 and $5,000, respectively. (CR 70–84). The jury also unanimously found that Corrine acted with malice in breaching her fiduciary duty. (CR 79, 84). In the bifurcated portion of the trial, the jury unanimously awarded $10,000 in exemplary damages to David. (CR 87, 89). At the close of evidence, Corrine moved for directed verdict on David's claim for breach of fiduciary duty. (5RR:16–18.) The court denied the directed verdict motion. (5RR:18.)  Corrine moved for a directed verdict on the claim for intentional infliction of emotion distress. (5RR:19–21).  The court denied the directed verdict motion. (5RR:21).  Corrine and David filed various post-trial motions. A hearings were held on the motions and the Court denied Corrine's motions and granted David's motion. (6RR:19; 7RR:14; 6RR:21; CR138).

## ISSUES PRESENTED

1.   Was there legally and factually sufficient evidence that Corrine Shearer owed David Shearer a fiduciary duty?

2.   Was Corrine Shearer entitled to a directed verdict on David Shearer's intentional infliction of emotional distress claim because an alternative tort was available to provide a remedy?

## STATEMENT REGARDING ORAL ARGUMENT

Appellant has found no reported or unreported Texas cases during its extensive research of cases pertaining to informal fiduciary duties that presents facts remotely analogous to the ones presented for the Court's consideration in this brief. The lack of case law addressing unique facts such as these, including the jury's finding the existence of a duty, breach and damages in the absence of any identifiable benefit to the Appellant, makes this a decision that,  if allowed to stand, will have far-reaching consequences that broaden the scope of informal fiduciary duties beyond those contemplated by law or equity. Appellant believes that oral argument will assist the Court in evaluating the various legal and public policy concerns underlying this decision.

## A.  The Parties' Relationship

John William Shearer, III ("John") and Corrine Augustine Nichols Hill Shearer ("Corrine") were ceremonially married September 4, 1990. (4RR:34). They remained married until they were divorced for financial reasons on February 1, 2008. (4RR:35, 184; 8RR:PX7). They continued to live together until John was hospitalized in Shreveport on November 2, 2009 and remained hospitalized until his passing on December 9, 2009. (4RR:35).

David Shearer ("David") is John's biological son. (4RR:134). John maintained a business called Warren City Motors that David joined him in operating in 1991. (4RR:141). It was expanded to a wrecker service called 271 Wreckers around 1996 and later moved the business to Gladewater where it became Shearer's Autoplex. (4RR:141–142). Corrine testified that in 2003 she called a family meeting to confront David about payments that were being made on David's truck and "everything else" from the Shearer's Autoplex business account. Corrine testified that before this meeting she was aware that John had authorized the payments but that financial times were difficult and John wanted David at the business. (4RR:80–81). David testified that Corrine called the meeting at which time Corrine made accusations against David that he had been misusing company checks to make some payments (4RR:144– 45). David testified that John authorized those expenses (4RR:145–146). David left the

business in 2005. (4RR:149). David testified that one of the reasons he left was because "Corrine getting involved in the business made her more aware of what we did. She didn't always like the way we did business. You know, we tried to do the best we could with what we had. When things were down, we tried to do the best we could. Not always did things seem fair." (4RR:149–150). Corrine testified that when David left the business, he left John with "all of it, debt and everything" and that after that her heart has never been the same. (4RR:81–82).

David also testified that his wife, Angela, was a realtor and worked with Corrine in real estate. (4RR:147). He testified that, around the same time as the 2003 meeting where David was confronted about the payments from Shearer Autoplex's business account, that Corrine told Angela to pack her things and to go to Longview. (4RR:148–149). He testified that Corrine and Angela's relationship never recovered after that. (4RR:149). Corrine testified that in the four or five years before John's death, she never went to visit David and Angela. (4RR:129). David testified that after the 2003 meeting, Corrine did not accompany John to any Christmas holidays at David's house . (4RR:153). Corrine testified that John asked her once why she would not go and Corrine responded "I would rather not get involved in that, John, I don't play those games. (4RR:129). David's attorney then asked Corrine "once you're done with somebody, you're done?". Corrine responded: "John felt the same way too. He just wanted to see his grandson." (4RR:129).

2

**B.     November - December 2009**

John was taken by Corrine to Shreveport VA Hospital on November 2, 2009 and remained hospitalized there until he was flown by helicopter to Houston on November 5, 2009 for additional treatment. (4RR:43, 50, 91–92). Corrine testified that she told a social worker at Shreveport VA Hospital that she and John were divorced. (4RR:44–45; 8RR:PX2-85). The medical record states that Corrine provided contact information for David Shearer and that the social worker called David and left him a voice mail that was not returned. (8RR:PX2-85). David testified that he was aware that he had authority to consult with doctors and certify any DNR on his father from the social worker and his uncle before his father left Shreveport for Houston. (4RR:185–186, 211).

After John arrived in Houston, Corrine consented to five different surgeries for John while he was hospitalized in Houston. (4RR:93, 177). David testified that he did not have any complaints about Corrine keeping him informed about surgical procedures that Corrine consented to and was appreciative of the role she played. (4RR:175, 178). In fact, he testified that he "didn't even think about it as far as having somebody there to initiate him to have the surgeries. I just thought they were taking care of it." (4RR:175). At trial, David testified that he didn't know that Corrine was making any decisions on his father's behalf while he was hospitalized, but in his deposition he testified that Corrine was not making any decisions. (4RR:176–177).

David testified that he personally visited John once from the time he was hospitalized in Shreveport until his death on December 9, 2009. (4RR:158–159). He testified that this was due to several reasons: (1) an accident that occurred a couple weeks before his father was admitted at the Shreveport VA Hospital in which he had shot his finger and it had to be amputated (4RR:153–155), (2) his wife being diagnosed with a brain tumor (4RR:155–156), and having to work a job to provide for his family. (4RR:155–156).

David testified that he considered himself available to the hospital by phone from November 2, 2009 until the DNR was declared on his father on December 9, 2009. (4RR:195). David testified that he believed his involvement in decisions regarding his father had already been established with the hospital before he visited on November 21, 2009. (4RR:195–196) and that the hospital considered him to be the authority to make medical decisions for John. (4RR:194). David admitted that, while he certainly could have, he did not talk to anyone with the hospital either before or after November 21, 2009 (4RR:190–191, 196). David stated that he "wasn't the person that was trying to force my way to take control" and that "all I wanted was what was best for my dad." (4RR:191). David admitted that when the Houston VA certified the DNR they were either ignoring David or based on the prior course of dealing with treatment decisions made by Corrine on John's behalf, or that Corrine was authorized to make those decisions. (4RR:199). Corrine testified that only John's

4

best interest was in her mind during the entire time he was hospitalized in Houston. (4RR:122). David testified that he never doubted that everything that Corrine did was in John's best interest. (4RR:168). It is not disputed that Corrine did not tell David that she had entered a DNR on John. (4RR:78, 84).

## C.     Proceedings in the county court

David sued Corrine in his individual capacity and as the independent administrator of John's estate on multiple theories. David asserted a claim for invasion of privacy, individually and on behalf of the estate, based upon his contention that Corrine invaded his right by ordering the DNR on John that personally belonged to David under Texas Health & Safety Code 166.039(b). (CR 62–63). He also asserted a claim, individually, for breach of fiduciary duty on the basis that Corrine owed him a duty and breached it by not advising him that she had entered the DNR on his father. (CR 63–64). David asserted claims for conversion of John's ashes and claims of intentional infliction of emotional distress. (CR 64–65). David sought mental anguish damages only, as well as exemplary damages. (CR 66–67).

Before trial, Corrine specially excepted to David's claim for conversion of ashes on the grounds that there is no recognized cause of action in Texas for conversion of ashes. (CR 20–21; 2RR:6–8, 11–12). The court denied the special exception. (CR 27; 2RR:11). Additionally, Corrine specially excepted to David's

5

intentional infliction of emotional distress claim. (CR 21–22; 2RR:12–15). The court denied the special exception. (CR 27; 2RR:14–15).

A jury was empaneled and trial was had. At the close of evidence, Corrine Shearer moved for a directed verdict on David's claim for conversion. (5RR:9). The court granted that motion. (5RR:15–16). Corrine moved for directed verdict on David's claim for breach of fiduciary duty claiming that there was no evidence to support the existence of a duty from Corrine to David. (5RR:16–18.) The court denied the directed verdict motion. (5RR:18.) Corrine moved for a directed verdict on the claim for intentional infliction of emotion distress. (5RR:19–21). The court denied the directed verdict motion. (5RR:21).

The charge was read to the jury and they retired to deliberate. They returned a verdict favorable to David Shearer, Individually, on his claims for breach of fiduciary duty and intentional infliction of emotional distress, awarding him mental anguish damages in the amount of $35,000 and $5,000, respectively. (CR 70–84). The jury also unanimously found that Corrine acted with malice in breaching her fiduciary duty. (CR 79, 84). In the bifurcated portion of the trial, the jury unanimously awarded $10,000 in exemplary damages to David. (CR 87, 89).

After trial, David filed a Motion for Judgment (CR 90) and Corrine timely filed a Motion to Disregard Certain Jury Findings and for J.N.O.V. that asked the court to disregard the jury's findings with respect to Questions 5-8 and 11 (relating to the

existence of and breach of fiduciary duty, and exemplary damages) and Questions 9 & 10 (relating to intentional infliction of emotional distress). (CR 124; 6RR:5–12). A hearing was held on the motions and the Court denied Corrine's motion and granted David's motion. (6RR:19, 21; CR138 ). Corrine then filed her Motion to Set Aside Judgment and for New Trial and the court held a hearing on the motion. (CR 141; 6RR:4–12). The Court denied Corrine's motion. (6RR:14). Corrine timely filed her Notice of Appeal. (CR 147).

## SUMMARY OF THE ARGUMENT

There was no legally or factually sufficient evidence that Corrine Shearer owed David Shearer a fiduciary duty. When viewing the actualities of the relationship between Corrine and David, there was legally insufficient evidence from an objective standpoint that would support the existence of a fiduciary duty from Corrine to David. In fact, the overwhelming weight of the evidence indicated to the contrary. There was legally insufficient evidence that David was accustomed to receiving judgment or advice from Corrine or that he was otherwise justified in believing she would act in the best interest. In fact, the overwhelming weight of the evidence indicated to the contrary. Finally, when viewing the relative positions of the parties, there was legally insufficient evidence that a fiduciary relationship existed as a result of Corrine's dominance on one side or David's weakness, dependence, or justifiable trust on the other. In fact, the overwhelming weight of the evidence indicated to the contrary.

7

Under prevailing law, a directed verdict was proper on David Shearer's claim for intentional infliction of emotional distress because another tort provided a remedy for the mental anguish damages sought and the other tort was among the theories of recovery submitted in the charge to the jury.

Corrine seeks to have the entirety of the judgment reversed and judgment rendered in her favor that David take nothing and that all costs be taxed against David for the county court proceedings and this appeal. Alternatively, Corrine seeks to have the judgment reversed and remanded to the county court for a new trial on David's claim for breach of fiduciary duty.

## STANDARD OF REVIEW

The appellate court must sustain a no evidence point of error when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727 (Tex. 2003). More than a scintilla of evidence exists if the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997); *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex.1995); *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 25

8

(Tex.1994). On the other hand, "[w]hen the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence." *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983).

In reviewing factual sufficiency, the appellate court considers all the evidence and will set aside the verdict only if the evidence supporting the jury finding is so weak or so against the overwhelming weight of the evidence that the finding is clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986).

**ARGUMENT**

**I.     The Informal Fiduciary Relationship**

Texas courts are reluctant to recognize a fiduciary relationship because it requires a person to place someone else's interests above her own. *Vanderpool v. Vanderpool*, 442 S.W.3d 756, 765 (Tex. App. – Tyler 2014)(citing *Lindley v. McKnight*, 349 S.W.3d 113, 124 (Tex. App.–Fort Worth 2011, no pet.)). The term "fiduciary" applies to any person who occupies a position of peculiar confidence towards another, and can arise in formal and informal relationships. *Vanderpool*, 442 S.W.3d at 765 (citing *Lee v. Hasson*, 286 S.W.3d 1, 14 (Tex. App.– Houston [14th Dist.] 2007, pet. denied)). Informal fiduciary relationships, sometimes referred to as "confidential relationships," may give rise to a fiduciary duty where one person trusts in and relies on another, whether the relation is a moral, social, domestic, or purely

9

personal one. *Vanderpool*, 442 S.W.3d at 765 (citing *Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex.1962)). The confidential relationship must exist prior to, and apart from, the transaction that forms the basis of the lawsuit. *Meyer v. Cathey*, 167 S.W.3d 327, 331 (Tex.2005). A confidential relationship exists where one person has a special confidence in another to the extent that the parties do not deal with each other equally, either because of dominance on one side or weakness, dependence, or justifiable trust on the other. *See Pope v. Darcey*, 667 S.W.2d 270, 275 (Tex. App.–Houston [14th Dist.] 1984, writ ref'd n.r.e.). A familial relationship, while considered a factor, does not by itself establish a fiduciary relationship. *Vanderpool*, 442 S.W.3d at 765 (citing *Gray v. Sangrey*, 428 S.W.3d 311, 316 (Tex. App.– Texarkana 2014, pet. denied)).

> **A.    When viewing the actualities of the relationship between Corrine Shearer and David Shearer, there was legally insufficient evidence from an objective standpoint that would support the existence of a fiduciary duty. Alternatively, the overwhelming weight of the evidence is to the contrary.**

The existence of an informal fiduciary relationship is generally a question of fact. . *Vanderpool*, 442 S.W.3d at 765 (citing *Thigpen v. Locke*, 363 S.W.2d at 253). But the issue is a question of law when the facts are undisputed or there is no evidence to show the existence of an informal fiduciary relationship. *Vanderpool*, 442 S.W.3d at 765 (citing *Meyer v. Cathey*, 167 S.W.3d 327, 330–31 (Tex.2005)). To determine whether a fiduciary relationship exists, courts review the actualities of the

relationship between the parties involved. *Vanderpool*, 442 S.W.3d at 765 (citing *Thigpen*, 363 S.W.2d at 253). Not every relationship involving a high degree of trust and confidence rises to the stature of a fiduciary relationship. *Vanderpool*, 442 S.W.3d at 765 (citing *Meyer*, 167 S.W.3d at 330). Moreover, the confidential relationship must exist prior to, and apart from, the transaction that forms the basis of the lawsuit. *Meyer v. Cathey*, 167 S.W.3d 327, 331 (Tex.2005)

### i. Legal insufficiency

Certainly, David will point to evidence that he spoke to Corrine on a daily basis during the period that John was in the hospitals and that he trusted that she would provide him with accurate information. Yet this is legally insufficient evidence when considering the actualities of the relationship that made any trust David maintained in Corrine purely subjective and unjustifiable. Moreover, legally insufficient evidence was presented establishing a confidential relationship existing prior to, and apart from the occurrence or transaction that formed the basis of David's lawsuit. The following colloquy is telling of how David's trust was merely subjective and that the actualities of the relationship did not objectively support the existence of a fiduciary duty:

> Q: Did you trust that she would accurately report his
> medical condition to you?
> A: Yes, sir.
> Q: Why did you trust that she would do that if you
> knew that in the past there had been problems.
> A: The problem between her and I was - - I wouldn't

11

think that that would be an issue why she wouldn't tell me about my dad. I didn't think that problem - - it wasn't a problem between her and I that would keep her from saying anything about my dad, I wouldn't think. (4RR:158).

David's counsel essentially argued to the jury that they should find that the reason Corrine breached her fiduciary duty was because:

> "She never felt right about David since he left the business. Her and David's wife's relationship ended in 2003. That, yeah, John would go over there for Christmas, yeah, John would go visit, but did Corrine ever go? No."
> (5RR:44).

This argument premises Corrine's *breach* of fiduciary duty on the same evidence that should have prevented the jury from considering whether she *owed* a fiduciary duty in the first place.

### ii.    Factual insufficiency

As detailed above, the overwhelming weight of the evidence demonstrated that the relationship between Corrine and David had deteriorated to such a degree that after 2003, Corrine Shearer and David Shearer had little, if anything, to do with one another. (See *supra* pp. 1–2). When Corrine was done with someone, she was done with someone. (4RR:129).

**B.** **There was legally insufficient evidence that David was accustomed to being guided by the judgment or advice of Corrine or that justified his belief that Corrine would act in his best interest. Alternatively, the overwhelming weight of the evidence demonstrated to the contrary and that Corrine only acted in John's best interest.**

    **i.** **Legal sufficiency**

Where one person is accustomed to being guided by the judgment or advice of another or is justified in believing one will act in the best interest of another because of a family relationship, a confidential relationship may arise. *Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex.1962). As already alluded to, from 2003 onward there is legally insufficient evidence that David was accustomed to being guided by the judgment or advice of Corrine. Moreover, there is legally insufficient evidence to overcome the undisputed evidence showing that the disintegration of the relationship rendered David's placement of trust in Corrine to act in his best interest wholly unjustifiable. *See Trostle v. Trostle*, 77 S.W.3d 908, 914–15 (Tex. App. – Amarillo 2002, no pet.)(upholding no-evidence summary judgment on existence of informal fiduciary duty where stepmother failed to tell son that she pursued father's wrongful death suit when facts showed that appellant's wife and appellee had differences and appellant and appellee did not talk much before father's death or at funeral).

Much was made by David in trial of a discussion regarding a visit with doctors about a possible DNR during David's November 21, 2009 visit and an apparent

13

phone call that shortly followed the visit in which John's condition was reported to have experienced a "miraculous recovery" and the "DNR was off the table." (4RR:14, 61–67). Corrine could not remember whether a meeting took place and, although she said she "probably" called David the following day (4RR:61–67), the phone records and David's own testimony irrefutably demonstrated that no such phone call could have taken place. (4RR:89–90; 182–183). Thus, there was legally insufficient evidence tending to suggest that Corrine relayed to David that he had experience a "miraculous recovery" or that a "DNR was off the table" as argued by David. While David suggested that "I wasn't the only one in contact with her. My sister was as well", there was no testimony from his sister on this matter and no other legally sufficient evidence presented to support this contention.

Corrine argues that the court is barred by rules of law or of evidence from giving weight to this evidence or the evidence offered is no more than a mere scintilla. *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727 (Tex. 2003).

### ii. Factual sufficiency

After John arrived in Houston, Corrine consented to five different surgeries for John while he was hospitalized in Houston. (4RR:93, 177). David testified that he did not have any complaints about Corrine keeping him informed about surgical procedures that Corrine consented to. (4RR:175). In fact, he testified that he "didn't

14

even think about it as far as having somebody there to initiate him to have the surgeries. I just thought they were taking care of it." (4RR:175). At trial, David testified that he didn't know that Corrine was making any decisions on his father's behalf while he was hospitalized, but in his deposition he testified that Corrine was not making any decisions. (4RR:176–177).

The evidence was undisputed that Corrine made numerous decisions prior to the DNR being entered that were unknown to David until after his father's death and upon which he had no complaint. Corrine testified that only John's best interest was in her mind during the entire time he was hospitalized in Houston. (4RR:122). David testified that he never doubted that everything that Corrine did was in John's best interest. (4RR:168). David stated that he "wasn't the person that was trying to force my way to take control" and that "all I wanted was what was best for my dad." (4RR:191). He also admitted that Corrine made the right decision in entering the DNR. (4RR:186).

David's counsel admitted David's position in the trial on this fact from the outset:

> "We agree, there is no dispute that John Shearer did not want to live on machines. We agree with that. David, not knowing the truth about his dad's medical condition, agrees it was the right decision to make. We agree with that. This case is about one thing and one thing only. Why she prevented, for no reason, a son who loved his father and a father who loved his son, from saying good-bye when she knew he was dying."

15

(4RR:17).

The overwhelming weight of the evidence demonstrates that Corrine acted in John's best interest and never assumed any duty to act in David's best interest.

**C.      In comparing the relative positions of the parties, there was legally insufficient evidence that Corrine and David lacked equal footing in the relationship. Alternatively, the overwhelming weight of the evidence showed to the contrary.**

**i.      Legal sufficiency**

A confidential relationship exists where one person has a special confidence in another to the extent that the parties do not deal with each other equally, either because of dominance on one side or weakness, dependence, or justifiable trust on the other. *See Pope v. Darcey*, 667 S.W.2d 270, 275 (Tex.App.-Houston [14th Dist.] 1984, writ ref'd n.r.e.). David's attorney's argued in closing arguments and at the hearing on Corrine's Motion to Disregard Certain Jury Findings and for J.N.O.V. that "a fiduciary relationship may arise either as a result of dominance on the part of one or weakness and the dependence on the part of the other [sic]." (6RR: 13). David's testimony regarding his injury, Angela's diagnosis with a tumor, and his responsibilities to his family rise to no more than a scintilla of evidence that David experienced a weakness and dependence juxtaposed to a dominance on Corrine's part.

16

### ii. Factual sufficiency

David testified that he considered himself available to the hospital by phone from November 2, 2009 until the DNR was declared on his father on December 9, 2009. (4RR:195). David testified that he was aware that he had authority to consult with doctors and certify any DNR on his father from the social worker and his uncle before his father left Shreveport for Houston. (4RR:185-186, 211). David admitted that, while he certainly could have, he did not talk to anyone with the hospital either before or after November 21, 2009 (4RR:190–191, 196). David stated that he "wasn't the person that was trying to force my way to take control" and that "all I wanted was what was best for my dad." (4RR:191). David admitted that when the Houston VA certified the DNR they were either ignoring David or based on the prior course of dealing with treatment decisions made by Corrine on John's behalf, or assuming that Corrine was authorized to make those decisions. (4RR:199). Finally, David testified that the doctors answered all the questions he had of them on November 21, 2009. (4RR:224).

David was armed with knowledge prior to John being taken to Houston that he was apparently the only one authorized to make medical treatment decisions for John. In a world of modern technology where his access to the doctors and to assert his desires were a phone call away, the overwhelming weight of the evidence weighs

17

against any inference that David was weak and dependant and unable himself to represent his own best interests.

## II. Invasion of privacy tort provided adequate theory of recovery for David Shearer's mental anguish and should have barred the submission of intentional infliction of emotional distress claim

Corrine specially excepted to David's cause of action for conversion of his father's ashes. (CR 20–21; 2RR:6–8, 11–12). Although the Court overruled that special exception during pre-trial (CR 27; 2RR:11), it granted Corrine's motion for directed verdict on that cause of action after the close of evidence. (5RR:9, 15–16)[1]. Corrine had also specially excepted to David's cause of action for intentional infliction of emotional distress on the grounds that there were alternative causes of action that precluded the IIED claim from operating as a "gap-filler" tort. (CR 21–22; 2RR:12–15). The Court overruled that special exception during pre-trial (CR 27; 2RR:14–15) and denied Corrine's motion for directed verdict asserted by Corrine on the same grounds. (5RR:21).

David plead facts in his Third Amended Original Petition that supported recovery of mental anguish damages under more traditional causes of action.

---

[1]It should be noted that the Court's granting of the directed verdict appeared to be on grounds that there was no evidence on the damage value to be assigned to John Shearer's ashes as opposed to the lack of a cause of action for conversion of ashes. However, David never plead any actual damages besides mental anguish damages for any cause of action asserted.

18

(CR65–66). To prove an intentional infliction of emotion distress, the Plaintiff must establish that no other cause of action would provide a remedy for the severe emotional distress caused by Defendant's conduct. *See Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005); *Hoffman-LaRoche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004). Intentional infliction of emotional distress claims are considered a "gap-filler" claim because it is only available to a plaintiff that has ***no other means of redress***. *See Hoffman-LaRoche, Inc.*, 144 S.W.3d at 447 (emphasis added). A plaintiff can satisfy the burden of proving that he has no other remedy than by an intentional infliction of emotional distress cause of action by showing that the defendant inflicted severe emotional distress in a manner so unusual that the plaintiff has no other recognized means of redress. *Id*. Where the gravamen of plaintiff's complaint is really another tort, intentional infliction of emotional distress should not be available. *Id*. If the defendant's conduct would support an alternative cause of action, the plaintiff is barred from pursuing an intentional infliction of emotional distress claim, regardless of whether (1) the plaintiff chooses to bring the alternative claim, (2) the plaintiff succeeds on the alternative claim, or (3) the alternative claim is barred. *See Creditwatch*, 157 S.W.3d at 816; *Hoffman-LaRoche, Inc.*, 144 S.W.3d at 447–48; *Standard Fruit & Veg. Co. v. Johnson*, 985 S.W.2d 62, 68 (Tex. 1998).

David's argument during the special exceptions and directed verdict hearings was the same: that David was vested with "rights to possess and dispose of the remains. And like - - Mr. Forrest says that right is caused [sic] by the Texas legislature and Texas Health and Safety Code 711.002 and it lays out the priority." (2RR:9–14).

Texas Health & Safety Code § 711.002 provides:

> (a) Except as provided by subsection (l), unless a decedent has left direction in writing for the disposition of the decedent's remains as provided by subsection (g), the following persons, in the priority listed, have the right to control the disposition, including cremation, of the decedents remains, shall inter the remains, and are liable for the reasonable cost of interment:
> (1) the person designated in a written instrument signed by the decedent;
> (2) the decedent's surviving spouse;
> (3) any one of the decedent's surviving adult children;
> (4) either one of the decedent's surviving parents;
> (5) any one of the decedent's surviving adult siblings; or
> (6) any adult person in the next degree of kinship in the order named by law to inherit the estate of the decedent.

David incorporated his claims for invasion of privacy under the IIED cause of action for violations of Texas Health & Safety Code 166.039(b).(CR 65–66).

Texas Health & Safety Code § 166.039(b) provides:

20

(b) If the patient does not have a legal guardian or an agent under a medical power of attorney, the attending physician and one person, if available, from one of the following categories, in the following priority, may make a treatment decision that may include a decision to withhold or withdraw life-sustaining treatment:
(1) the patient's spouse;
(2) the patient's reasonably available adult children;
(3) the patient's parents; or
(4) the patient's nearest living relative.

During pre-trial, David argued that, should there be no recognized cause of action for conversion, that the IIED claim stepped in as a gap-filler. (2RR:13–14). The court asked Corrine's counsel if the IIED claim would have been appropriately pled had David chose not to plead the conversion claim at all. (2RR:14–15). Corrine's counsel responded that such a claim could have been plead under the invasion of privacy claim since it essentially mirrored the same theory underlying the other Texas Health & Safety Code violations that were plead by David. (2RR:15).

The availability of an IIED claim depends upon the unavailability of a more traditional tort theory that can provide a means to recovery of mental anguish damages. The only damages sought by Plaintiff, besides the exemplary damages, were mental anguish damages and were subject to recovery in the alternative invasion of privacy claim that David plead and on which a question was submitted to the jury. The

21

Court erred by permitting the IIED claim to survive under these circumstances.

## CONCLUSION AND PRAYER

Corrine Shearer has shown that the evidence at trial was legally and factually insufficient to show that a fiduciary duty existed between Corrine and David Shearer. Corrine Shearer has shown that David Shearer had an alternative remedy besides an IIED cause of action to recover mental anguish damages and that alternative remedy was pled and presented to the jury. Corrine Shearer would ask that the Court reverse and render judgment on both grounds, that David Shearer take nothing, and that Corrine Shearer be awarded her costs.

Alternatively, the evidence at trial was factually insufficient to show that a fiduciary duty existed between Corrine Shearer and David Shearer. Corrine Shearer would ask that the Court reverse and remand the case to the trial court for a new trial on David Shearer's claim for breach of fiduciary duty.

## CERTIFICATE OF COMPLIANCE WITH RULE 9.4(e)

1.      This brief complies with the type-volume limitation of Texas Rule of Appellate Procedure 9.4(e)(i)(2)(B) because, according to the Microsoft Word 2010 word count function, it contains 3,671 words on pages 7-22, excluding the parts of the brief exempted by Texas Rule of Appellate Procedure 9.4(e)(i)(1).

2.      This brief complies with the typeface requirements of Texas Rule of Appellate Procedure 9.4(e) because it has been prepared in proportionally spaced typeface using Microsoft Word 2010 software in Times New Roman 14-point font in text and Times New Roman 12-point in footnotes.

/s/ J. Chad Parker
J. Chad Parker

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the *Brief of Appellant Corrine Augustine Nichols Hill Shearer* was served by electronic service and/or email to the following counsel of records on March 9, 2015.

Carson Runge
SLOAN, BAGLEY, HATCHER & PERRY
101 East Whaley Street
Longview, Texas 75601
Via Email

/s/ J. Chad Parker
J. Chad Parker

NO. 12-14-00302-CV

IN THE TWELFTH COURT OF APPEALS
TYLER, TEXAS

CORRINE AUGUSTINE NICHOLS HILL SHEARER

*Appellant*

v.

DAVID SHEARER, INDIVIDUALLY AND AS THE INDEPENDENT ADMINISTRATOR
OF THE ESTATE OF JOHN WILLIAM SHEARER, III

*Appellee*

**APPENDIX TO BRIEF OF APPELLANT**

Tab 1:    Order On Defendant's Special Exceptions to
          Plaintiff's Second Amended Petition

Tab 2:    Court's Charge/Jury Instructions

Tab 3:    Court's Charge/Jury Instructions as to Exemplary Damages

Tab 4:    Final Judgment

Tab 5:    Order on Defendant's Motion to Set Aside Judgment
          and for New Trial

Tab 6:    Tex. Health & Safety Code §166.039

Tab 7:    Tex. Health & Safety Code §711.002

FILED
GREGG COUNTY, TEXAS

JUN 26 :

3:24 O'CLOCK P M
BARBARA DUNCAN, DISTRICT CLERK
BY_____, DEPUTY

CAUSE NO. 2011-1919-CCL2

| | | |
|---|---|---|
| DAVID SHEARER, Individually and as | § | IN THE COUNTY |
| Independent Administrator of the Estate | § | |
| of JOHN WILLIAM SHEARER, III, | § | |
| and LAWYNDA OLSEN | § | |
| | § | COURT AT LAW NUMBER # 2 |
| | § | |
| vs. | § | |
| | § | |
| CORRINE AUGUSTINE NICHOLS | § | OF GREGG COUNTY, TEXAS |
| HILL SHEARER | § | |

## ORDER ON DEFENDANT'S SPECIAL EXCEPTIONS TO PLAINTIFF'S SECOND AMENDED ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, **CORRINE AUGUSTINE NICHOLS HILL SHEARER** ( Herein after referred to as "Defendant"), Defendant in the above-entitled and numbered cause and submits this Order on her Special Exceptions to Plaintiff's Second Amended Original Petition.

1. Special Exceptions to Paragraphs 27 through 29 of Plaintiff's Second Amended Original Petition

   _____          _____
   SUSTAINED                  OVERRULED

2. Special Exceptions to Paragraphs 30 through 34 of Plaintiff's Second Amended Original Petition

   _____          _____
   SUSTAINED                  OVERRULED



ORDER ON DEFENDANT'S SPECIAL EXCEPTIONS
TO PLAINTIFF'S SECOND AMENDED PETITION                                    Page 1

**27**

3. Special Exceptions to Paragraph 35 of Plaintiff's Second Amended Original Petition

_____     _____
SUSTAINED                      OVERRULED

JUN 26 2014

_____
JUDGE PRESIDING



ORDER ON DEFENDANT'S SPECIAL EXCEPTIONS
TO PLAINTIFF'S SECOND AMENDED PETITION

Page 2

**28**

FILED
GREGG COUNTY, TEXAS

JUL 0 2 2014

_____ O'CLOCK A M
BARBARA DUNCAN, DISTRICT CLERK
BY_____, DEPUTY

CAUSE NO. 2011-1919-CCL2

| | | |
|---|---|---|
| DAVID SHEARER, Individually and as Independent Administrator of the Estate of JOHN WILLIAM SHEARER, III | §<br>§<br>§<br>§ | IN THE COUNTY COURT<br><br>AT LAW #2 |
| v. | §<br>§ | |
| CORRINE AUGUSTINE HILL SHEARER | §<br>§ | GREGG COUNTY, TEXAS |

## JURY INSTRUCTIONS

**LADIES AND GENTLEMEN OF THE JURY:**

After the closing arguments, you will go to the jury room to decide the case, answer the questions that are attached, and reach a verdict. You may discuss the case with other jurors only when you are all together in the jury room.

Remember my previous instructions: Do not discuss the case with anyone else, either in person or by any other means. Do not do any independent investigation about the case or conduct any research. Do not look up any words in dictionaries or on the Internet. Do not post information about the case on the Internet. Do not share any special knowledge or experiences with the other jurors. Do not use your phone or any other electronic device during your deliberations for any reason.

Any notes you have taken are for your own personal use. You may take your notes back into the jury room and consult them during deliberations, but do not show or read your notes to your fellow jurors during your deliberations. Your notes are not evidence. Each of you should rely on your independent recollection of the evidence and not be influenced by the fact that another juror has or has not taken notes.

You must leave your notes with the bailiff when you are not deliberating. The bailiff will give your notes to me promptly after collecting them from you. I will make sure your notes are kept in a safe, secure location and not disclosed to anyone. After you complete your deliberations, the bailiff will collect your notes. When you are released from jury duty, the bailiff will promptly destroy your notes so that nobody can read what you wrote.

Here are the instructions for answering the questions.
1. Do not let bias, prejudice, or sympathy play any part in your decision.
2. Base your answers only on the evidence admitted in court and on the law that is in these instructions and questions. Do not consider or discuss any evidence that was not admitted in the courtroom.

**70**

3. You are to make up your own minds about the facts. You are the sole judges of the credibility of the witnesses and the weight to give their testimony. But on matters of law, you must follow all of my instructions.

4. If my instructions use a word in a way that is different from its ordinary meaning, use the meaning I give you, which will be a proper legal definition.

5. All the questions and answers are important. No one should say that any question or answer is not important.

6. Answer "yes" or "no" to all questions unless you are told otherwise. A "yes" answer must be based on a preponderance of the evidence unless you are told otherwise. Whenever a question requires an answer other than "yes" or "no," your answer must be based on a preponderance of the evidence unless you are told otherwise. The term "preponderance of the evidence" means the greater weight of credible evidence presented in this case. If you do not find that a preponderance of the evidence supports a "yes" answer, then answer "no." A preponderance of the evidence is not measured by the number of witnesses or by the number of documents admitted in evidence. For a fact to be proved by a preponderance of the evidence, you must find that the fact is more likely true than not true.

7. Do not decide who you think should win before you answer the questions and then just answer the questions to match your decision. Answer each question carefully without considering who will win. Do not discuss or consider the effect your answers will have.

8. Do not answer questions by drawing straws or by any method of chance.

9. Some questions might ask you for a dollar amount. Do not agree in advance to decide on a dollar amount by adding up each juror's amount and then figuring the average.

10. Do not trade your answers. For example, do not say, "I will answer this question your way if you answer another question my way."

11. Unless directed otherwise, the answers to the questions must be based on the decision of at least 10 of the 12 jurors. The same 10 jurors must agree on every answer. Do not agree to be bound by a vote of anything less than 10 jurors, even if it would be a majority.

As I have said before, if you do not follow these instructions, you will be guilty of juror misconduct, and I might have to order a new trial and start this process over again. This would waste your time and the parties' money, and would require the taxpayers of this county to pay for another trial. If a juror breaks any of these rules, tell that person to stop and report it to me immediately.

A fact may be established by direct evidence or by circumstantial evidence or both. A fact is established by direct evidence when proved by documentary evidence or by witnesses who saw the act done or heard the words spoken. A fact is established by circumstantial evidence when it may be fairly and reasonably inferred from other facts proved.

## DEFINITIONS

1. "DAVID SHEARER" means Plaintiff, David Shearer, in his individual capacity.
2. "CORRINE SHEARER" means Defendant, Corrine Augustine Nichols Hill Shearer.
3. "JOHN SHEARER" means John William Shearer, III, Deceased.

**QUESTION 1:**

Did CORRINE SHEARER intentionally intrude into JOHN SHEARER's solitude, seclusion, or private affairs or concerns in a manner that would be highly offensive to a reasonable person?

Answer "Yes" or "No":

ANSWER: NO

**QUESTION 2:**

Answer the following question only if you answered "yes" to Question 1. Otherwise, do not answer the following question.

What sum of money, if paid now in cash, would fairly and reasonably compensate JOHN SHEARER for mental anguish sustained in the past, if any, resulting from the occurrence in question?

"Mental anguish" means the conscious emotional pain, torment, and suffering experienced by JOHN SHEARER before his death as a result of the intentional invasion of JOHN SHEARER's solitude, seclusion or privacy.

Consider the element of damage listed above and none other. Do not award any sum of money on any element if you have otherwise, under some other element, awarded a sum of money for the same loss. That is, do not compensate twice for the same loss, if any. Do not include interest on any amount of damages you find.

Answer, in dollars and cents, for damages, if any.

ANSWER: _____

**QUESTION 3:**

Did CORRINE SHEARER intentionally intrude into DAVID SHEARER's solitude, seclusion, or private affairs or concerns in a manner that would be highly offensive to a reasonable person?

Answer "Yes" or "No":

ANSWER: __NO_____

Answer the following question only if you answered "Yes" to Question 3. Otherwise, do not answer the following question.


**QUESTION 4:**

What sum of money, if paid now in cash, would fairly and reasonably compensate DAVID SHEARER for his damages, if any, that resulted from the occurrence in question?

Consider the elements of damage listed below and none other. Consider each element separately. Do not award any sum of money on any element if you have otherwise, under some other element, awarded a sum of money for the same loss. That is, do not compensate twice for the same loss, if any. Do not include interest on any amount of damages you find.

Answer separately, in dollar and cents, for damages, if any.


1. Mental anguish sustained in the past.

   "Mental anguish" means the emotional pain, torment, and suffering experienced by DAVID SHEARER as a result of the intentional invasion of DAVID SHEARER's solitude, seclusion or privacy.



   ANSWER:_____



2. Mental anguish sustained in the future.


   ANSWER: _____

**QUESTION 5:**

Did a relationship of trust and confidence exist between DAVID SHEARER and CORRINE SHEARER at the time of the occurrence?

A relationship of trust and confidence existed if DAVID SHEARER justifiably placed trust and confidence in CORRINE SHEARER to act in DAVID SHEARER's best interest. DAVID SHEARER's subjective trust and feelings alone do not justify transforming arms-length dealings into a relationship of trust and confidence.

Answer "Yes" or "No":

ANSWER: Yes

Answer the following question only if you answered "Yes" to Question 5. Otherwise, do not answer the following question.

**QUESTION 6:**

Did CORRINE SHEARER fail to comply with her fiduciary duty to DAVID SHEARER?

Because a relationship of trust and confidence existed between them, CORRINE SHEARER owed DAVID SHEARER a fiduciary duty. To prove CORRINE SHEARER failed to comply with her fiduciary duty, DAVID SHEARER must show—

1. The occurrence in question was not fair and equitable to DAVID SHEARER; or

2. CORRINE SHEARER did not make reasonable use of the confidence that DAVID SHEARER placed in her; or

3. CORRINE SHEARER failed to act in the utmost good faith or exercise the most scrupulous honesty toward DAVID SHEARER; or

4. CORRINE SHEARER placed her own interests before DAVID SHEARER's, used the advantage of her position to gain a benefit for herself at the expense of DAVID SHEARER, or placed herself in a position where her self-interest might conflict with her obligations as a fiduciary; or

5. CORRINE SHEARER failed to deal openly and to fully and fairly disclose all important information to DAVID SHEARER concerning the occurrences in question.

Answer "Yes" or "No":

ANSWER: __Yes__

**77**

Answer the following question only if you answered "Yes" to Question 5 and "Yes" to Question 6. Otherwise, do not answer the following question.

**QUESTION 7:**

What sum of money, if paid now in cash, would fairly and reasonably compensate DAVID SHEARER for his damages, if any, that resulted from the occurrence in question?

Consider the elements of damage listed below and none other. Consider each element separately. Do not award any sum of money on any element if you have otherwise, under some other element, awarded a sum of money for the same loss. That is, do not compensate twice for the same loss, if any. Do not include interest on any amount of damages you find.

Answer separately, in dollar and cents, for damages, if any.

1. Mental anguish sustained in the past.

"Mental anguish" means the emotional pain, torment, and suffering experienced by DAVID SHEARER because of CORRINE SHEARER's failure to comply with her fiduciary duty.

ANSWER: 35,000

2. Mental anguish sustained in the future.

ANSWER: 0

78

Answer the following question only if you answered "Yes" to Question 7.   Otherwise, do not answer the following question.

**QUESTION 8:**

To answer "Yes" to the following question, your answer must be unanimous. You may answer "No" to the following question only upon a vote of ten or more jurors. Otherwise, you must not answer the following question.

Do you find by clear and convincing evidence that the harm to DAVID SHEARER resulted from malice?

"Malice" means a specific intent by CORRINE SHEARER to cause substantial harm to DAVID SHEARER.

Answer "Yes" or "No":

ANSWER: ___Yes_____

**QUESTION 9:**

Did CORRINE SHEARER intentionally inflict severe emotional distress on DAVID SHEARER?

Intentional infliction of emotion distress occurs when the defendant acts intentionally or recklessly with extreme and outrageous conduct to cause the plaintiff emotional distress and the emotional distress suffered by the plaintiff was severe.

"Extreme and outrageous conduct" occurs only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community.

Answer "Yes" or "No."

ANSWER: Yes

Answer the following question only if you answered "Yes" to Question 9. Otherwise, do not answer the following question.

**QUESTION 10:**

What sum of money, if paid now in cash, would fairly and reasonably compensate DAVID SHEARER for his damages, if any, that resulted from the occurrence in question?

Consider the elements of damage listed below and none other. Consider each element separately. Do not award any sum of money on any element if you have otherwise, under some other element, awarded a sum of money for the same loss. That is, do not compensate twice for the same loss, if any. Do not include interest on any amount of damages you find.

Answer separately, in dollar and cents, for damages, if any.

1. Mental anguish sustained in the past.

"Mental anguish" means the emotional pain, torment, and suffering experienced by DAVID SHEARER as a result of the intentional infliction of severe emotional distress.

ANSWER: 1,500

2. Mental anguish sustained in the future.

ANSWER: Ø

**Presiding Juror:**

1. When you go into the jury room to answer the questions, the first thing you will need to do is choose a presiding juror.
2. The presiding juror has these duties:
   a. have the complete charge read aloud if it will be helpful to your deliberations;
   b. preside over your deliberations, meaning manage the discussions, and see that you follow these instructions;
   c. give written questions or comments to the bailiff who will give them to the judge;
   d. write down the answers you agree on;
   e. get the signatures for the verdict certificate; and
   f. notify the bailiff that you have reached a verdict.


**Instructions for Signing the Verdict Certificate:**

1. You may answer the questions on a vote of 10 jurors. The same 10 jurors must agree on every answer in the charge. This means you may not have one group of 10 jurors agree on one answer and a different group of 10 jurors agree on another answer.
2. If 10 jurors agree on every answer, those 10 jurors sign the verdict. If all 12 of you agree on every answer, you are unanimous and only the presiding juror signs the verdict.
3. All jurors should deliberate on every question. You may end up with all 12 of you agreeing on some answers, while only 10 of you agree on other answers. But when you sign the verdict, only those 10 who agree on every answer will sign the verdict.

JUL 0 2 2014
@ 10:24 A.M.

_____
JUDGE PRESIDING

**82**

FILED
GREGG COUNTY, TEXAS

JUL 02 2014

\_\_\_\_\_ O'CLOCK \_\_\_\_ M
BARBARA DUNCAN, DISTRICT CLERK
BY_____, DEPUTY

## VERDICT CERTIFICATE AS TO QUESTIONS

We, the jury, have answered the above and foregoing questions as herein indicated, and herewith return same into court as our Verdict.

**CHECK ONE:**

_____ **Our verdict is unanimous.** All Twelve (12) of us have agreed to each and every answer. The presiding juror has signed the certificate for all 12 of us.

_Jordan Farmer_ | _Jordan Farmer_
Signature of Presiding Juror | Printed Name of Presiding Juror

✓ **Our verdict is not unanimous.** Ten (10) of us have agreed to each and every answer and have signed the certificate below.

Jurors' Signatures | Jurors' Printed Names

1. _[signature]_ | _Pam Rice_
2. _Hope Sellers_ | _Hope Sellers_
3. _[signature]_ | _Brian D Lanka_
4. _[signature]_ | _Cathy Nobles_
5. _[signature]_ | _[illegible]_
6. _[signature]_ | _Sonya Gilbert_
7. _[signature]_ | _[illegible]_
8. _[signature]_ | _Gonzalo V Rojas Jr_
9. _[signature]_ | _Travis Null_
10. _Jordan Farmer_ | _Jordan Farmer_
11. _____ | _____

## VERDICT CERTIFICATE AS TO QUESTIONS 5, 6, 7 & 8

      We, the jury, have answered the above and foregoing questions 5, 6, 7 & 8 as herein indicated, and herewith return same into court as our Verdict.

_____ **Our verdict is unanimous.**   I certify that the jury was unanimous in answering questions 5, 6, 7 & 8.  All Twelve (12) of us have agreed to each and every answer.  The presiding juror has signed the certificate for all 12 of us.


_____
Signature of Presiding Juror

_____
Printed Name of Presiding Juror

**FILED**
GREGG COUNTY, TEXAS

JUL 02 2014

_____ O'CLOCK ___ M
BARBARA DUNCAN, DISTRICT CLERK
BY _____, DEPUTY

CAUSE NO. 2011-1919-CCL2

| | | |
|---|---|---|
| DAVID SHEARER, Individually and as<br>Independent Administrator of the Estate<br>of JOHN WILLIAM SHEARER, III | §<br>§<br>§ | IN THE COUNTY COURT |
| | § | AT LAW #2 |
| v. | §<br>§ | |
| CORRINE AUGUSTINE HILL<br>SHEARER | §<br>§ | GREGG COUNTY, TEXAS |

## JURY INSTRUCTIONS AS TO EXEMPLARY DAMAGES

**LADIES AND GENTLEMEN OF THE JURY:**

After the closing arguments, you will go to the jury room to decide the case, answer the questions that are attached, and reach a verdict. You may discuss the case with other jurors only when you are all together in the jury room.

Remember my previous instructions: Do not discuss the case with anyone else, either in person or by any other means. Do not do any independent investigation about the case or conduct any research. Do not look up any words in dictionaries or on the Internet. Do not post information about the case on the Internet. Do not share any special knowledge or experiences with the other jurors. Do not use your phone or any other electronic device during your deliberations for any reason.

Any notes you have taken are for your own personal use. You may take your notes back into the jury room and consult them during deliberations, but do not show or read your notes to your fellow jurors during your deliberations. Your notes are not evidence. Each of you should rely on your independent recollection of the evidence and not be influenced by the fact that another juror has or has not taken notes.

You must leave your notes with the bailiff when you are not deliberating. The bailiff will give your notes to me promptly after collecting them from you. I will make sure your notes are kept in a safe, secure location and not disclosed to anyone. After you complete your deliberations, the bailiff will collect your notes. When you are released from jury duty, the bailiff will promptly destroy your notes so that nobody can read what you wrote.

Here are the instructions for answering the questions.
1. Do not let bias, prejudice, or sympathy play any part in your decision.
2. Base your answers only on the evidence admitted in court and on the law that is in these instructions and questions. Do not consider or discuss any evidence that was not admitted in the courtroom.
3. You are to make up your own minds about the facts. You are the sole judges of the credibility of the witnesses and the weight to give their testimony. But on matters of law, you must follow all of my instructions.

**85**

4. If my instructions use a word in a way that is different from its ordinary meaning, use the meaning I give you, which will be a proper legal definition.

5. All the questions and answers are important. No one should say that any question or answer is not important.

6. Answer "yes" or "no" to all questions unless you are told otherwise. A "yes" answer must be based on a preponderance of the evidence unless you are told otherwise. Whenever a question requires an answer other than "yes" or "no," your answer must be based on a preponderance of the evidence unless you are told otherwise. The term "preponderance of the evidence" means the greater weight of credible evidence presented in this case. If you do not find that a preponderance of the evidence supports a "yes" answer, then answer "no." A preponderance of the evidence is not measured by the number of witnesses or by the number of documents admitted in evidence. For a fact to be proved by a preponderance of the evidence, you must find that the fact is more likely true than not true.

7. Do not decide who you think should win before you answer the questions and then just answer the questions to match your decision. Answer each question carefully without considering who will win. Do not discuss or consider the effect your answers will have.

8. Do not answer questions by drawing straws or by any method of chance.

9. Some questions might ask you for a dollar amount. Do not agree in advance to decide on a dollar amount by adding up each juror's amount and then figuring the average.

10. Do not trade your answers. For example, do not say, "I will answer this question your way if you answer another question my way."

As I have said before, if you do not follow these instructions, you will be guilty of juror misconduct, and I might have to order a new trial and start this process over again. This would waste your time and the parties' money, and would require the taxpayers of this county to pay for another trial. If a juror breaks any of these rules, tell that person to stop and report it to me immediately.

A fact may be established by direct evidence or by circumstantial evidence or both. A fact is established by direct evidence when proved by documentary evidence or by witnesses who saw the act done or heard the words spoken. A fact is established by circumstantial evidence when it may be fairly and reasonably inferred from other facts proved.

DEFINITIONS

1. "DAVID SHEARER" means Plaintiff, David Shearer, in his individual capacity.

2. "CORRINE SHEARER" means Defendant, Corrine Augustine Nichols Hill Shearer.

**QUESTION 11:**

You are instructed that you must unanimously agree on the amount of any award of exemplary damages.

What sum of money, if any, should be assessed against CORRINE SHEARER and awarded to DAVID SHEARER as exemplary damages for the conduct found in response to Question 8?

"Exemplary damages" means any damages awarded as a penalty or by way of punishment but not for compensatory purposes. Exemplary damages includes punitive damages.

Factors to consider in awarding exemplary damages, if any, are—

1. The nature of the wrong.
2. The character of the conduct involved.
3. The degree of culpability of the wrongdoer.
4. The situation and sensibilities of the parties concerned.
5. The extent to which such conduct offends a public sense of justice and propriety.
6. The net worth of CORRINE SHEARER.

Answer in dollars and cents, if any.

ANSWER: $10,000

**Presiding Juror:**

1. When you go into the jury room to answer the questions, the first thing you will need to do is choose a presiding juror.
2. The presiding juror has these duties:

   a. have the complete charge read aloud if it will be helpful to your deliberations;

   b. preside over your deliberations, meaning manage the discussions, and see that you follow these instructions;

   c. give written questions or comments to the bailiff who will give them to the judge;

   d. write down the answers you agree on;

   e. get the signatures for the verdict certificate; and

   f. notify the bailiff that you have reached a verdict.

JUL 0 2 2014

3:23 P.M.

_____
JUDGE PRESIDING

FILED
GREGG COUNTY, TEXAS

JUL 0 2 2014

_____ O'CLOCK ___ M
BARBARA DUNCAN, DISTRICT CLERK
BY_____DEPUTY

## VERDICT CERTIFICATE AS TO QUESTION 11

We, the jury, have answered the above and foregoing question 11 as herein indicated, and herewith return same into court as our Verdict.

**Our verdict is unanimous.** I certify that the jury was unanimous in answering question 11. All Twelve (12) of us have agreed to the answer. The presiding juror has signed the certificate for all 12 of us.

_____
Signature of Presiding Juror

Jordan Farmer
_____
Printed Name of Presiding Juror

**89**

FILED
GREGG COUNTY, TEXAS

JUL 2 8 2014

155 O'CLOCK P M
BARBARA DUNCAN, DISTRICT CLERK
BY _____ DEPUTY

| DAVID SHEARER, Individually and as | § | IN THE COUNTY COURT |
| Independent Administrator of the Estate | § | |
| Of JOHN WILLIAM SHEARER, III | § | |
| Plaintiff | § | |
| | § | |
| | § | |
| vs. | § | AT LAW #2 |
| | § | |
| CORRINE AUGUSTINE HILL | § | |
| SHEARER | § | |
| Defendant | § | GREGG COUNTY, TEXAS |

## FINAL JUDGMENT

On July 1, 2014, this case was called for trial. Plaintiff David Shearer appeared in person and through his counsel and announced ready for trial. Defendant Corrine Augustine Hill Shearer appeared in person and through her counsel and announced ready for trial.

After a jury of twelve qualified jurors was impaneled and sworn, it heard the evidence and the arguments of counsel. The Court then submitted to the jury the Court's Charge, which contained the questions, definitions, and instructions to the jury. On July 2, 2014, in response to those questions, and after due deliberations, the jury made findings that the Court received, filed, and entered of record. The Court polled the jury, and the jury was unanimous on the answers to Questions 5, 6 and 8. Due to the bifurcated proceedings, the Court provided the jury a second charge after the jury unanimously answered Questions 5, 6 and 8 in the first charge. On July 2, 2014, in response to those questions in the second charge, and after due deliberations, the jury made a unanimous finding to the sole question of exemplary damages contained in the Court's second charge that the Court received, filed, and entered of record. The questions submitted to

the jury and the jury's findings are attached hereto as Exhibits "A" and "B" and are incorporated by reference. Plaintiff filed a motion for judgment on the verdict.

The court hereby RENDERS judgment for Plaintiff.

1. Therefore, the Court orders that Plaintiff David Shearer recover compensatory damages from Defendant Corrine Augustine Nichols Hill Shearer in the sum of *$36,500.00 (MS)* Additionally, the Court awards Plaintiff prejudgment interest on the $36,500.00 at the annual rate of 5 percent in the sum of $5,339.95. Further, the Court orders that Plaintiff David Shearer recover exemplary damages from Defendant Corrine Augustine Nichols Hill Shearer in the sum of $10,000.00. No prejudgment interest is awarded on the $10,000.00 in exemplary damages pursuant to Texas Civil Practice and Remedies Code §41.007. Lastly, the Court awards Plaintiff post-judgment interest on the total sum at the annual rate of 5% compounded annually, and $2,062.50 in court costs.

2. This is a suit for personal injury and prejudgment interest is governed by Texas Finance Code § 304.101, *et seq*. Prejudgment interest began accruing on August 24, 2011, the date on which this lawsuit was filed, and stopped accruing on the day before the judgment was rendered, which was July 27, 2014.

3. This judgment is final, disposes of all claims and parties, and is appealable.

4. The Court orders execution to issue for this judgment.

SIGNED this _25_ day of _July_ , 2014.

_____
JUDGE PRESIDING

**APPROVED AS TO FORM ONLY:**

_____
CARSON R. RUNGE
*Attorneys for Plaintiff David Shearer*

_____
CHAD PARKER
*Attorney for Defendant Corrine Augustine*
*Hill Shearer*

CAUSE NO. 2011-1919-CCL2

FILED
GREGG COUNTY, TEXAS

SEP 22 2014

3:20 O'CLOCK

BARBARA DUNCAN, DISTRICT CLERK
BY_____ DEPUTY

| | | |
|---|---|---|
| DAVID SHEARER, Individually and as | § | IN THE COUNTY |
| Independent Administrator of the Estate | § | |
| of JOHN WILLIAM SHEARER, III, | § | |
| and LAWYNDA OLSEN | § | |
| | § | COURT AT LAW NUMBER # 2 |
| | § | |
| | § | |
| vs. | § | |
| | § | |
| CORRINE AUGUSTINE NICHOLS | § | OF GREGG COUNTY, TEXAS |
| HILL SHEARER | § | |

## ORDER ON DEFENDANT'S MOTION TO SET ASIDE JUDGMENT AND FOR NEW TRIAL

Came on to be heard Defendant's Motion to Set Aside Judgment and for New Trial. The Court, having considered the Motion, the pleadings on file herein, and the arguments of counsel, is of the opinion that the Motion should in all things be *Denied.*

It is therefore **ORDERED, ADJUDGED, AND DECREED** that said Motion is *Denied.*

Signed this **22** day of **September**, 2014.

_____
JUDGE PRESIDING

ORDER ON DEFENDANT'S MOTION TO SET ASIDE JUDGMENT AND FOR NEW TRIAL

**146**

Vernon's Texas Statutes and Codes Annotated
  Health and Safety Code (Refs & Annos)
    Title 2. Health
      Subtitle H. Public Health Provisions
        Chapter 166. Advance Directives (Refs & Annos)
          Subchapter B. Directive to Physicians (Refs & Annos)

V.T.C.A., Health & Safety Code § 166.039

§ 166.039. Procedure When Person Has Not Executed or Issued
a Directive and Is Incompetent or Incapable of Communication

Currentness

(a) If an adult qualified patient has not executed or issued a directive and is incompetent or otherwise mentally or physically incapable of communication, the attending physician and the patient's legal guardian or an agent under a medical power of attorney may make a treatment decision that may include a decision to withhold or withdraw life-sustaining treatment from the patient.

(b) If the patient does not have a legal guardian or an agent under a medical power of attorney, the attending physician and one person, if available, from one of the following categories, in the following priority, may make a treatment decision that may include a decision to withhold or withdraw life-sustaining treatment:

  (1) the patient's spouse;

  (2) the patient's reasonably available adult children;

  (3) the patient's parents; or

  (4) the patient's nearest living relative.

(c) A treatment decision made under Subsection (a) or (b) must be based on knowledge of what the patient would desire, if known.

(d) A treatment decision made under Subsection (b) must be documented in the patient's medical record and signed by the attending physician.

(e) If the patient does not have a legal guardian and a person listed in Subsection (b) is not available, a treatment decision made under Subsection (b) must be concurred in by another physician who is not involved in the treatment of the patient or who is a representative of an ethics or medical committee of the health care facility in which the person is a patient.

(f) The fact that an adult qualified patient has not executed or issued a directive does not create a presumption that the patient does not want a treatment decision to be made to withhold or withdraw life-sustaining treatment.

(g) A person listed in Subsection (b) who wishes to challenge a treatment decision made under this section must apply for temporary guardianship under Section 875, Texas Probate Code. [1] The court may waive applicable fees in that proceeding.

**Credits**
Acts 1989, 71st Leg., ch. 678, § 1, eff. Sept. 1, 1989. Amended by Acts 1997, 75th Leg., ch. 291, § 3, eff. Jan. 1, 1998. Renumbered from V.T.C.A., Health & Safety Code § 672.009 and amended by Acts 1999, 76th Leg., ch. 450, § 1.03, eff. Sept. 1, 1999.

**Editors' Notes**

**REVISOR'S NOTE**

**2010 Main Volume**

The source law refers to an adult qualified patient who has not "issued a directive." The revised law substitutes the phrase "executed or issued" because Section 3 of the source law, revised as Sections 672.003-672.005, states that a declarant "executes" a written directive and "issues" a nonwritten directive.

Notes of Decisions (2)

Footnotes

1       Repealed; see, now, V.T.C.A., Estates Code § 1251.001 et seq.
V. T. C. A., Health & Safety Code § 166.039, TX HEALTH & S § 166.039
Current through the end of the 2013 Third Called Session of the 83rd Legislature

**End of Document**                                                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Health and Safety Code (Refs & Annos)
    Title 8. Death and Disposition of the Body (Refs & Annos)
      Subtitle C. Cemeteries and Crematories (Refs & Annos)
        Chapter 711. General Provisions Relating to Cemeteries (Refs & Annos)
          Subchapter A. General Provisions

V.T.C.A., Health & Safety Code § 711.002

§ 711.002. Disposition of Remains; Duty to Inter

Effective: September 1, 2013
Currentness

(a) Except as provided by Subsection (l), unless a decedent has left directions in writing for the disposition of the decedent's remains as provided in Subsection (g), the following persons, in the priority listed, have the right to control the disposition, including cremation, of the decedent's remains, shall inter the remains, and are liable for the reasonable cost of interment:

  (1) the person designated in a written instrument signed by the decedent;

  (2) the decedent's surviving spouse;

  (3) any one of the decedent's surviving adult children;

  (4) either one of the decedent's surviving parents;

  (5) any one of the decedent's surviving adult siblings; or

  (6) any adult person in the next degree of kinship in the order named by law to inherit the estate of the decedent.

(a-1) If the person with the right to control the disposition of the decedent's remains fails to make final arrangements or appoint another person to make final arrangements for the disposition before the earlier of the 6th day after the date the person received notice of the decedent's death or the 10th day after the date the decedent died, the person is presumed to be unable or unwilling to control the disposition, and:

  (1) the person's right to control the disposition is terminated; and

  (2) the right to control the disposition is passed to the following persons in the following priority:

    (A) any other person in the same priority class under Subsection (a) as the person whose right was terminated; or

(B) a person in a different priority class, in the priority listed in Subsection (a).

(a-2) If a United States Department of Defense Record of Emergency Data, DD Form 93, or a successor form, was in effect at the time of death for a decedent who died in a manner described by 10 U.S.C. Sections 1481(a)(1) through (8), the DD Form 93 controls over any other written instrument described by Subsection (a)(1) or (g) with respect to designating a person to control the disposition of the decedent's remains. Notwithstanding Subsections (b) and (c), the form is legally sufficient if it is properly completed, signed by the decedent, and witnessed in the manner required by the form.

(b) The written instrument referred to in Subsection (a)(1) shall be in substantially the following form:

I,,........................................................................................................................................................................

**APPOINTMENT OF AGENT TO CONTROL DISPOSITION OF REMAINS**

(your name and address)

being of sound mind, willfully and voluntarily make known my desire that, upon my death,

the disposition of my remains shall be controlled by .......................................................................................................

(name of agent)

in accordance with Section 711.002 of the Health and Safety Code and, with respect to that subject only, I hereby appoint such person as my agent (attorney-in-fact).

All decisions made by my agent with respect to the disposition of my remains, including cremation, shall be binding.

SPECIAL DIRECTIONS:

Set forth below are any special directions limiting the power granted to my agent:

..............................................................................................................................................................................

..............................................................................................................................................................................

..............................................................................................................................................................................

..............................................................................................................................................................................

..............................................................................................................................................................................

AGENT:

Name:......................................................................................................................................................................

Address:...................................................................................................................................................................

Telephone Number:..................................................................................................................................................

Acceptance of Appointment:..................................................................................................................................................................

**(signature of agent)**
Date of Signature:..................................................................................................................................................................

SUCCESSORS:

If my agent dies, becomes legally disabled, resigns, or refuses to act, I hereby appoint the following persons (each to act alone and successively, in the order named) to serve as my agent (attorney-in-fact) to control the disposition of my remains as authorized by this document:

1. First Successor

Name:..................................................................................................................................................................

Address:..................................................................................................................................................................

Telephone Number:..................................................................................................................................................................

Acceptance of Appointment:..................................................................................................................................................................

(signature of first successor)

Date of Signature:..................................................................................................................................................................

2. Second Successor

Name:..................................................................................................................................................................

Address:..................................................................................................................................................................

Telephone Number:..................................................................................................................................................................

Acceptance of Appointment:..................................................................................................................................................................

(signature of second successor)

Date of Signature:..................................................................................................................................................................

DURATION:

This appointment becomes effective upon my death.

PRIOR APPOINTMENTS REVOKED:

I hereby revoke any prior appointment of any person to control the disposition of my remains.

RELIANCE:

I hereby agree that any cemetery organization, business operating a crematory or columbarium or both, funeral director or embalmer, or funeral establishment who receives a copy of this document may act under it. Any modification or revocation of this document is not effective as to any such party until that party receives actual notice of the modification or revocation. No such party shall be liable because of reliance on a copy of this document.

ASSUMPTION:

THE AGENT, AND EACH SUCCESSOR AGENT, BY ACCEPTING THIS APPOINTMENT, ASSUMES THE OBLIGATIONS PROVIDED IN, AND IS BOUND BY THE PROVISIONS OF, SECTION 711.002 OF THE HEALTH AND SAFETY CODE.

Signed this _____ day of _____, 19___.

_____
 (your signature)
State of _____

County of _____

This document was acknowledged before me on _____ (date) by _____ (name of principal).

_____
 (signature of notarial officer)
(Seal, if any, of notary)

_____
 (printed name)
 My commission expires:

 _____

(c) A written instrument is legally sufficient under Subsection (a)(1) if the wording of the instrument complies substantially with Subsection (b), the instrument is properly completed, the instrument is signed by the decedent, the agent, and each successor agent, and the signature of the decedent is acknowledged. Such written instrument may be modified or revoked only by a subsequent written instrument that complies with this subsection.

(d) A person listed in Subsection (a) has the right, duty, and liability provided by that subsection only if there is no person in a priority listed before the person.

(e) If there is no person with the duty to inter under Subsection (a) and:

(1) an inquest is held, the person conducting the inquest shall inter the remains; and

(2) an inquest is not held, the county in which the death occurred shall inter the remains.

(f) A person who represents that the person knows the identity of a decedent and, in order to procure the disposition, including cremation, of the decedent's remains, signs an order or statement, other than a death certificate, warrants the identity of the decedent and is liable for all damages that result, directly or indirectly, from that warrant.

(g) A person may provide written directions for the disposition, including cremation, of the person's remains in a will, a prepaid funeral contract, or a written instrument signed and acknowledged by such person. The directions may govern the inscription to be placed on a grave marker attached to any plot in which the decedent had the right of sepulture at the time of death and in which plot the decedent is subsequently interred. The directions may be modified or revoked only by a subsequent writing signed and acknowledged by such person. The person otherwise entitled to control the disposition of a decedent's remains under this section shall faithfully carry out the directions of the decedent to the extent that the decedent's estate or the person controlling the disposition are financially able to do so.

(h) If the directions are in a will, they shall be carried out immediately without the necessity of probate. If the will is not probated or is declared invalid for testamentary purposes, the directions are valid to the extent to which they have been acted on in good faith.

(i) A cemetery organization, a business operating a crematory or columbarium or both, a funeral director or an embalmer, or a funeral establishment shall not be liable for carrying out the written directions of a decedent or the directions of any person who represents that the person is entitled to control the disposition of the decedent's remains.

(j) Repealed by Acts 2011, 82nd Leg., ch. 707 (H.B. 549), § 3.

(k) Any dispute among any of the persons listed in Subsection (a) concerning their right to control the disposition, including cremation, of a decedent's remains shall be resolved by a court of competent jurisdiction. A cemetery organization or funeral establishment shall not be liable for refusing to accept the decedent's remains, or to inter or otherwise dispose of the decedent's remains, until it receives a court order or other suitable confirmation that the dispute has been resolved or settled.

(l) A person listed in Subsection (a) may not control the disposition of the decedent's remains if, in connection with the decedent's death, an indictment has been filed charging the person with a crime under Chapter 19, Penal Code, that involves family violence against the decedent.

**Credits**

Acts 1989, 71st Leg., ch. 678, § 1, eff. Sept. 1, 1989. Amended by Acts 1991, 72nd Leg., ch. 14, § 213, eff. Sept. 1, 1991; Acts 1993, 73rd Leg., ch. 634, § 2, eff. Sept. 1, 1993; Acts 1997, 75th Leg., ch. 967, § 1, eff. Sept. 1, 1997; Acts 1999, 76th Leg., ch. 1385, § 1, eff. Aug. 30, 1999; Acts 2011, 82nd Leg., ch. 95 (H.B. 74), § 1, eff. May 20, 2011; Acts 2011, 82nd Leg., ch. 532 (H.B. 2495), § 2, eff. Sept. 1, 2011; Acts 2011, 82nd Leg., ch. 707 (H.B. 549), §§ 1, 3, eff. June 17, 2011; Acts 2011, 82nd Leg., ch. 1336 (S.B. 1167), § 2, eff. Sept. 1, 2011; Acts 2013, 83rd Leg., ch. 161 (S.B. 1093), § 22.001(28), eff. Sept. 1, 2013.

**Editors' Notes**

**REVISOR'S NOTE**

**2010 Main Volume**

The revised law substitutes "person conducting the inquest" for "coroner." Under Chapter 49, Code of Criminal Procedure, justices of the peace and medical examiners conduct inquests.

Notes of Decisions (14)

V. T. C. A., Health & Safety Code § 711.002, TX HEALTH & S § 711.002
Current through the end of the 2013 Third Called Session of the 83rd Legislature

---

**End of Document**
© 2015 Thomson Reuters. No claim to original U.S. Government Works.